In the Matter of Paul POTHOVEN, Gretchen Pothoven, Debtors.

In the Matter of Lynn T. FISHER, Sue A. Fisher, Debtors.

In the Matter of Brett J. FERGUSON, Debtor.

In the Matter of Donald D. HERR, Ruth A. Herr, Debtors.

In the Matter of Kenneth EGEL, Carolyn Egel, Debtors.

In the Matter of Clarence B. HOLTKAMP, Marion R. Holtkamp, Debtors.

In the Matter of Douglas Leroy CLING, Joan Kristen Cling, Debtors.

In the Matter of TRIPLE K CORPORATION, Debtor.

In the Matter of Herbert D. LAMAACK, Twyla R. Lamaack, Debtors.

Bankruptcy Nos. 86–2039–C, 87–95–C, 87–485–C, 87–198–C, 87–376–D, 87–827–D, 87–1241–D, 86–3347–D and 87–1430–D.

United States Bankruptcy Court, S.D. Iowa.

March 29, 1988.

Dumbaugh and Childers, P.C., Cedar Rapids, Iowa, for debtors.

## MEMORANDUM OPINION AND ORDER ON MOTIONS TO RECONSIDER AND MOTIONS TO ALTER OR AMEND JUDGMENT ON ATTORNEY FEES

LEE M. JACKWIG, Chief Judge and RUSSELL J. HILL, Bankruptcy Judge.

The attorneys for the above-named debtors filed motions to reconsider and motions to alter or amend the orders entered by this court allowing attorney fees and expenses. Since the same issue is presented in each motion, the court will consider the motions together in this opinion and order.

In each of the above cases the attorneys for the debtors presented an application for allowance of attorney fees and expenses. Each application was noticed to all creditors and a bar date for objections was established. No objections were made to

the applications and an order was presented to the court. After independent review of the applications the court granted each application but made reductions in the fees requested and noted the basis for the reduction on the order.

Each motion to alter or amend and reconsider states the following as support:

1. Debtor's undersigned counsel submitted an application for fees in this matter to which there was no objection.

2. With no notice to the undersigned counsel, and with no opportunity for hearing, the court *sua sponte* reduced the fees prayed for in the application.

3. By this *sua sponte* action of the court, the undersigned counsel had no opportunity to present evidence regarding the reasonableness of the fees requested in the application.

4. This *sua sponte* action of the court violates due process of law.

For the reasons set forth below the motions to alter and amend judgment and to reconsider ruling are denied except where otherwise noted.

### DISCUSSION

Motions for reconsideration and to amend or alter judgment serve a limited function—to correct manifest error of law or fact or to present newly discovered evidence. *In re Pettibone Corp.*, 74 B.R. 293, 298 (Bankr.N.D.Ill.1987). The debtors' counsel assert that the court acted improperly in *sua sponte* reducing the fees requested without allowing the opportunity for the presentation of evidence regarding the reasonableness of the fees requested. Counsel contend that this action violates due process of law.

Under the Bankruptcy Code compensation of professional persons is governed by 11 U.S.C. section 330 which provides:

(a) *After notice* to any parties in interest and to the United States trustee *and a hearing*, and subject to sections 326, 328, and 329 of this title, *the court may award* to a trustee, to an examiner, to a professional person employed under section 327 or 1103 of this title, or to the debtor's attorney—

(1) reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney, as the case may be, and by any paraprofessional persons employed by such trustee, professional person, or attorney, as the case may be, based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title; and

(2) reimbursement for actual, necessary expenses.

(Emphasis added.) The phrase "after notice and a hearing" is subject to rules of construction contained in section 102 of the Bankruptcy Code. Section 102 provides:

In this title—

(1) "after notice and a hearing", or a similar phrase—

(A) means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances; but

(B) authorizes an act without an actual hearing if such notice is given properly and if—

(i) such a hearing is not requested timely by a party in interest; or

(ii) there is insufficient time for a hearing to be commenced before such act must be done, and the court authorizes such act;

Accordingly, a hearing will not be necessary in every instance. In this district, applications for fees and expenses are noticed to all creditors and a bar date for objections is set. The notice states that if objections are filed a separate hearing will be set. However, if no objections are filed the notice states that an appropriate order will be entered. Thus, the debtors' counsel in all of the cases were aware that no hearing would be held if no objection was received. Moreover, given the statutes, rules and case law governing the court's role in considering fee applications, the debtors' counsel should have been aware that the court is authorized to scrutinize

fee applications without giving counsel notice and opportunity for hearing.

Bankruptcy Rule 2016 requires that all the necessary information be in a fee application itself. The practical aspect of this requirement has been discussed by the bankruptcy court for the Northern District of Illinois:

> Applicants cannot rely on the fee petition hearing to 'explain' the fee petition. Life is too short and the daily court call is too crowded to allow valuable court time for such verbal explanations and testimony thereon. Applicants must put the explanations in writing and may submit an accompanying affidavit containing further explanation or details if necessary.

*In re Pettibone Corp.*, 74 B.R. 293, 300 (Bankr.N.D.Ill.1987); *In re Wildman*, 72 B.R. 700, 712 (Bankr.N.D.Ill.1987).

> Indeed, given the heavy flow of work through the bankruptcy courts and the many hundreds of fee petitions passed on by each bankruptcy judge each year ... counsel must be held to the ordinary standards for reconsideration. Otherwise, many fee applications would be heard twice since attorneys would take a second bite at the apple after the fees they seek are reduced. There is no reason why this court should be subjected to the burden of double fee hearings or being obliged to take evidence on matters that can be set forth in the application or affidavits, or to hear testimony on matters that counsel did not even see fit to present in writing.

*In re Pettibone Corp.*, 74 B.R. at 300–31.

■ It is well established that a bankruptcy court has the independent authority and responsibility to determine the reasonableness of all fee requests, regardless of whether objections are filed. *Id.* at 299–300; *In re Ochoa*, 74 B.R. 191, 194 (Bankr. N.D.N.Y.1987); *In re NRG Resources, Inc.*, 64 B.R. 643, 650 (W.D.La.1986); *In re Esar Ventures*, 62 B.R. 204, 205 (Bankr.D. Haw.1986); *In re Jensen–Farley Pictures, Inc.*, 47 B.R. 557, 585 (Bankr.D.Utah 1985). Judges are justified in relying upon their own knowledge of customary rates and experience concerning reasonable and proper fees, without the need for independent evidence. *In re Farwell*, 77 B.R. 198, 201 (N.D.Ill.1987); *Brown v. Culpepper*, 561 F.2d 1177 (5th Cir.1977) "The bankruptcy judge can and must apply his own expertise *sua sponte*, if necessary, in order to be fair to both counsel and creditors because, in the final analysis, either excess generosity or extreme miserliness in allowing fees will reflect in the public perception of the system". Lavien, *Fees As Seen From The Bankruptcy Bench*, 89 Com.L.J. 136, 138 (March 1984).

For each of the fee applications submitted, this court engaged in essentially a line-by-line review of the services and expenses reported. That evaluation necessarily entailed reflection upon the court's own experience with the case and knowledge of the case law governing the standard for review of attorney fee applications. A brief explanation for the reductions made was included on each order allowing fees. In order to provide counsel with a better understanding of the court's orders and to provide guidance for future attorney fee applicants, the standards utilized by both bankruptcy judges in this district will be set forth below. Thereafter, the court shall restate the rationale for each fee order.

### Standards For Review Of Attorney Fee Applications

■ The primary objective of any fee application is to reveal sufficient data to enable the court to determine whether the services rendered were reasonable, actual and necessary. *In re Jensen–Farley Pictures, Inc.*, 47 B.R. 557, 582 (Bankr.D.Utah 1985). Bankruptcy Rule 2016 requires that:

> A person seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a *detailed* statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested. (Emphasis added.)

Several recent bankruptcy court decisions have exhaustively examined the subject of

attorneys' fees. *See In re First Software, Corp.*, 79 B.R. 108 (Bankr.D.Mass.1987); *In re Pettibone Corp.*, 74 B.R. 293 (Bankr. N.D.Ill.1987); *In re S.T.N. Enterprises*, 70 B.R. 823 (Bankr.D.Vt.1987); *In re Amatex Corp.*, 70 B.R. 624 (Bankr.E.D.Pa.1985). This decision shall draw upon the analyses in those opinions and the cases cited therein to provide a framework for the evaluation of fee applications in this district.

■ At a minimum, every application for attorney fees must include a specific analysis of each task for which compensation is sought. The application should list and describe the activity, the date it was performed, the attorney or other professional who performed the work, the time spent on the work and the individual's hourly rate. *In re Pettibone Corp.*, 74 B.R. 293, 301 (Bankr.N.D.Ill.1987); *In re S.T.N. Enterprises, Inc.*, 70 B.R. 823, 832–33 (Bankr.D.Vt.1987). Applications which give no explanation of the activities performed generally are not compensable. *In re Pettibone Corp.*, 74 B.R. at 301; *In re Affinito & Son, Inc.*, 63 B.R. 495, 498 (Bankr.W.D.Pa.1986). For example, entries for telephone calls or conferences should detail the purpose, length and parties involved. Merely noting "telephone call" or "conference with x" is insufficient. Similar specificity should accompany every activity for which compensation is sought and several activities should not be lumped into a single entry. Rather, counsel must list each type of service with the corresponding specific time allotment. This allows the court to determine whether a particular activity was necessary and the time spent was reasonable. *In re Pettibone, Corp.*, 74 B.R. at 301. Services which are lumped together will not be fully compensated. *Id.* at 302.

■ The general organization of a fee application may vary in accordance with a particular office's accounting structure. However, time records should be kept and reported chronologically by activity or project rather than by attorney. Some courts require services to be categorized into general and specific areas of concentration and separately analyzed with an accompanying narrative. *See, In re Pettibone Corp.*, 74 B.R. at 304–05; *In re Continental Illinois Securities Litigation*, 572 F.Supp. 931 (N.D.Ill.1983). Although this may aid the court in particularly large or complicated cases, it is not necessary if the application adequately and chronologically describes the work performed during the progression of the case.

■ In addition to the time sheet itemization of services, fee applications should be accompanied by a description of each professional for whom compensation is sought. Such a narrative or "firm resume" should enable the court to determine the appropriate hourly rate which is customarily charged in the community by someone who possesses similar skill, experience, expertise, stature and reputation. *In re Shades of Beauty, Inc.*, 56 B.R. 946, 951 (Bankr.E.D.N.Y.1986). In 1986 former Bankruptcy Judge Richard Stageman identified the range of compensation for legal services performed in bankruptcy cases in the Southern District of Iowa as between $65 and $150 an hour. *Matter of Pester Corp.*, Case No. 85–338–C, unpublished op. at 15 (Bankr.S.D.Iowa, July 9, 1986). The range at the lower end, $65 to $85, was found to be sufficient compensation for routine bankruptcy work or educating an inexperienced lawyer. The higher range was found to be appropriate compensation for high quality work of an expert in a complex case. *Id.* This court acknowledges that hourly rates are subject to various factors such as location and inflation and will not set down an absolute minimum or maximum rate of compensation. Rather the burden shall remain with the applicant to demonstrate the value of his or her services in relation to a particular case.

■ The standard of 11 U.S.C. section 330 that compensation be for actual and *necessary* services makes the exercise of "billing judgment" a mandatory requirement in bankruptcy fee matters. The U.S. Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) noted that attorneys are obligated to make a good faith effort to exclude from a fee request hours that are excessive, re-

dundant or otherwise unnecessary. If such requests are found in a fee application they are disallowed by the court as unnecessary. *In re Liberal Market, Inc.*, 24 B.R. 653, 664 (Bankr.S.D.Ohio 1982). The following divisions are illustrative examples of the appropriate exercise of "billing judgment" in bankruptcy cases.

### A. *Duplication of Services*

"Generally, attorneys should work independently, without the incessant 'conferring' that so often forms a major part of many fee petitions". *In re Pettibone Corp.*, 74 B.R. at 303; *In re Amatex Corp.*, 70 B.R. at 626. The bankruptcy estate should not bear the cost of compensating each attorney present at an intra-office conference unless counsel can show that the estate benefitted from each attorney's special area of expertise. In the absence of a showing of the purpose of the conference and why the conference was essential to efficient management of the case, this court will not award full compensation to each attorney present at the conference. *In re Amatex Corp.*, 70 B.R. at 626. The same reasoning applies to duplicative court appearances.[1] *Id.; see also, In re Jensen–Farley Pictures, Inc.*, 47 B.R. 557, 583 (Bankr.D.Utah 1985). When more than one attorney appears in court, no fee or a reduced fee should be sought for non-participating counsel. This court will examine the frequency and length of duplicative services in individual cases to determine whether a reduction in compensation sought is appropriate.

### B. *Level of Skill*

It is generally recognized that not all services should carry the same rate of compensation. Services of a non-legal nature, such as filing papers with the court, should not be compensable at the hourly billing rate of an attorney when such ministerial and routine tasks can be performed by non-legal employees at a lesser rate. *In re Amatax Corp.*, 70 B.R.

at 627; *In re Jensen–Farley Pictures, Inc.*, 47 B.R. at 583–84. Similarly, senior partner rates should be charged only for work that warrants the attention of a senior partner. Work done by a senior partner that a beginning associate or paralegal could do will be compensated at a lower rate. *In re Pettibone Corp.*, 74 B.R. at 303. The Bankruptcy Code encourages cost-saving measures such as the use of paralegals and law clerks. 11 U.S.C. § 330(a)(1). Compensation for the services of such persons, however, is also subject to court scrutiny and the standard of reasonableness.

Another example of "billing judgment" in relation to the level of skill required for a given task involves time spent in less productive tasks. Travel time is viewed by many courts as unproductive and thus either not compensable or not compensable at the attorneys' regular hourly rate. *In re C. & J. Oil Co., Inc.*, 81 B.R. 398, 404 (Bankr.W.D.Va.1987). *In re S.T.N. Enterprises, Inc.*, 70 B.R. 823, 837 (Bankr.D.Vt.1987); *In re Amatex Corp.*, 70 B.R. 624, 627 (Bankr.E.D.Pa.1985) (and cases cited therein). This court agrees that time spent in transit may be necessary, but is clearly not as productive as time spent in court or in the office. Accordingly, time spent traveling to and from a location typically shall be compensated at one-half of the attorneys' or other professionals' hourly rate unless it can be shown that the time was utilized more productively by preparing for meetings, court appearances, et cetera.

Similarly time spent on legal research is not always necessary and compensable. Counsel are presumed to be sufficiently experienced and to have an adequate background in the applicable law. *In re Pettibone Corp.*, 74 B.R. at 303. This court does recognize that particular questions requiring research will arise and, where adequately documented, will be fully compensable. Moreover, this court does not draw a distinction between certain rou-

---

**1.** The court recognizes an exception to this general rule where local counsel is required to attend hearings with counsel not admitted to the district pursuant to Local District Court Rule 5(d)(3).

tine tasks, such as telephone calls and correspondence, and "truly legal services". *See, e.g., In re Pettibone Corp.,* 74 B.R. at 303–04. Where an application sufficiently describes such services as an effort to resolve matters informally they will be fully compensable. *In re Pettibone Corp.,* 74 B.R. at 304; *In re S.T.N. Enterprises, Inc.,* 70 B.R. at 842. Care should be taken, however, to record the actual time spent on each item. Small amounts of time should not be uniformly reported as a minimum block of time (i.e., .25 or .2 hours). *In re Pettibone Corp.,* 74 B.R. at 302. The use of one-tenth of an hour as the minimum charge for a telephone call or reception of communication is more acceptable. *Id.*

C. *Expenses*

 Under 11 U.S.C. section 330(a)(2) counsel may claim reimbursement for actual and necessary expenses. This standard is identical to that employed for compensation of services and thus "billing judgment" is again relevant. Out-of-pocket expenses chargeable to a particular case must be itemized and documented. The actual cost of photocopying, long-distance telephone charges, postal expense and travel costs may be reimbursed. *In re S.T.N. Enterprises, Inc.,* 70 B.R. at 844. Charges which are part of the cost of operating overhead are not properly chargeable to the bankruptcy estate. Overhead expenses typically include rent, insurance, taxes, utilities, secretarial and clerical pay, library, computer costs, office supplies, local telephone charges, meals, and local travel. *Id.* This court also views charges for computer legal research as an overhead expense and thus noncompensable.

D. *Fee Application Preparation*

 Given the requirements of specificity and the exercise of "billing judgment" imposed on bankruptcy practitioners, this court adhers to the view that time spent on fee application preparation is compensable. *In re Pettibone Corp.,* 74 B.R. at 304; *In re Jensen–Farley Pictures, Inc.,* 47 B.R. at 583. Such compensation is, however, subject to reasonable limits.

It is the intent of the judges of this district that the above guidelines will assist counsel to develop office record keeping and reporting procedures that, in turn, will result in efficient and accurate fee applications, thereby enhancing the potential for full compensation of requested attorney fees and expenses.

## FEE ORDERS

*Paul and Gretchen Pothoven,* Case No. 86–2039–C.

On July 29, 1987 counsel for the debtors submitted an application for attorney's fees and allowances and expense reimbursement seeking interim fees and expenses in the amount of $14,864.32 for the period of March 1, 1986 through May 31, 1987. The application contained a professional biography of each of the persons performing services, a general narrative description of work performed, a chronological itemization of services and an explanation of abbreviations and individual hourly billing rates.

 On October 16, 1987 the court entered an order allowing fees and expenses in the sum of $13,325.92, thereby reducing the requested amount by $1,548.40. A notation was made on the order that hourly rates for phones and travel were reduced to $60.00 per hour. Upon re-examination of the fee application the court finds that entries for travel were properly reduced to $60.00 per hour. As noted in the above discussion, the court generally will reduce travel time by one-half of the normal billing rate. Here the court did allow a rate in excess of one-half of the attorney's regular rate. The reduction for travel time on August 21, 1986, January 19, 1987 and April 7, 1987 in the amount of $453.00 shall stand.

 At the time of the entry of the order, this court held the view that phone calls or conferences were not in the category of "truly legal services" and therefore did not warrant compensation at a full hourly rate. As noted in the above guidelines, such tasks will be viewed as necessary in resolving matters informally. However, the requirement of specificity

still remains. Thus the court has re-examined the reductions made and will only reduce the fees requested where the items are not sufficiently documented. Some examples of inadequate detail are as follows:

| Date | Atty | | Hours | Rate | Total |
|------|------|--|-------|------|-------|
| 4/11/86 | 11 | Conference | 1.30 | 140.00 | 182.00 |
| 4/29/86 | 46 | Conference with B. O'Malley | .40 | 125.00 | 50.00 |
| 5/21/86 | 46 | Phone conference with client; phone conference with Mike Broerman, attorney for Co-op. | .50 | 125.00 | 62.50 |
| 6/26/86 | 46 | Phone conference with client; phone conference with Bernard O'Malley | 1.00 | 125.00 | 125.00 |
| 8/19/86 | 46 | Letter to client: Tel. conf. with client | .40 | 90.00 | 36.00 |

. . . .

Rather than disallow compensation entirely for inadequately documented services, the court has reduced the requested hourly rate to $60.00 per hour. This reduction totals $417.00. Thus, combined with the $453.00 reduction for travel time the total reduction should be $870.00 rather than $1,548.40. Accordingly, after reconsideration the debtors' counsel are entitled to fees and expenses in the amount of $13,994.32 or $678.40 more than originally granted.

*Lynn and Sue Fisher,* Case No. 87–95–C.

On September 2, 1987 counsel for the debtors submitted an application for allowance of fees and expenses in the amount of $12,180.72 for the period of January 1, 1987 through July 31, 1987. On October 26, 1987 the court entered an order allowing fees and expenses in the sum of $11,396.72 thereby reducing the requested amount by $784.00. A notation was made on the order that hourly fees were reduced to $60.00 per hour for travel and phone conversations.

Upon re-examination of the fee application the court again finds that entries for travel on February 9, 1987 and May 19, 1987 were properly reduced to $60.00 per hour. This court has re-examined the reductions made for phone calls and will only reduce the fees requested where the entries are not sufficiently documented.

Entries for phone calls or conferences on the following days are not adequately documented: February 23, 1987; May 21, 1987; May 29, 1987; June 23, 1987; July 27, 1987 (2); and July 29, 1987. The court has reduced the hourly rate to $60.00 per hour. These reductions and those made for travel time total $391.50. Accordingly, after reconsideration the debtors' counsel are entitled to fees and expenses in the amount of $11,789.22 or $392.50 more than originally granted.

*Brett J. Ferguson,* Case No. 87–485–C.

On August 31, 1987 counsel for the debtor submitted an application for allowance of fees and expenses in the amount of $5,925.82 for the period of February 1, 1987 through July 31, 1987. On October 27, 1987 the court entered an order allowing fees and expenses in the sum of $5,671.32, thereby reducing the requested amount by $254.50. A notation was made on the order that hourly fees were reduced to $60.00 per hour for travel and phone conversations.

Upon re-examination of the fee application the court again finds that entries for travel on March 20, 1987 and June 17, 1987 were properly reduced to $60.00 per hour. As noted above the court will no longer automatically reduce compensation for phone conferences. This fee application is a good example of the proper documentation for such services. The documentation of services performed by paralegals, however, could use some improvement. While practitioners are encouraged to uti-

lize the skills of paralegals, compensation for their services is also subject to scrutiny by this court. In this application the court found three examples of services performed by a paralegal that simply should not be compensated by the estate. On March 27, 1987 and April 15, 1987 phone calls were made, but the parties were not reached. On June 5, 1987 a conference about a conference is unexplained. Accordingly, after reconsideration the fee application is reduced by $93.00 to account for travel and unnecessary paralegal time. Debtor's counsel is therefore entitled to $5,832.82 or $161.50 more than originally granted.

*Donald and Ruth Herr*, Case No. 87–198–C.

On July 27, 1987 counsel for the debtors submitted an application for allowance of fees and expenses in the amount of $16,503.93 for the period of January 1, 1987 through June 30, 1987. On November 17, 1987 the court entered an order allowing fees and expenses in the sum of $15,163.93, thereby reducing the requested amount by $1,340.00. A notation was made on the order that hourly fees were reduced to $60.00 per hour for phone calls and travel. The order further noted an adjustment was made for duplicative work on various dates.

As noted above the court upon reconsideration will reduce the hourly rate for travel, undocumented or duplicative services. Using this analysis a reduction of at least $481.00 is justified. Upon further consideration of the entire case file, the court found an error in its order granting the *second* application for allowance of fees and expenses entered on February 16, 1988. It seems that although the second application sought the allowance of $8,880.76, the letter transmitting the proposed order requested $9,880.76. The court used the $9,880.76 figure to calculate the fees to be granted. The debtors' attorneys have been granted a total fee of $24,488.69 which included a bonus of $1,000.00. Accordingly, the court will not alter its original order

granting fees and expenses in the sum of $15,163.93.

*Kenneth and Carolyn Egel*, Case No. 87–376–D.

On August 3, 1987 counsel for the debtors submitted an application for allowance of fees and expenses in the amount of $12,211.91 for the period of November 1, 1986 through June 30, 1987. On December 11, 1987 the court entered an order allowing fees in the amount of $11,511.41, thereby reducing the amount requested by $700.50. The court noted on the order that the fees were reduced to $60.00 per hour for duplicative or undocumented services and driving time.

Upon reconsideration the court agrees that a scrivener error was made on the order which should read $11,511.41 rather than $1,151.14. Otherwise the reductions made were proper. This case proceeded as a Chapter 12 case for only four months prior to being converted to a Chapter 7 case. The reduction in the hourly rate charged for travel time has been previously discussed. The remaining reduction was made on the basis of duplicative and undocumented services. The conferring of two attorneys is noted on December 22, 1986; December 29, 1986; January 30, 1987; and February 27, 1987. No explanation is given as to why it was necessary to have two or more professionals working on the same activities. Nothing in the court file indicates this was a particularly complex case or the existence of novel issues. This court realizes the necessity of briefing substitute counsel and the sharing of ideas between attorneys. However, the estate should not bear the cost of such interaction without justification. Accordingly, the court's original order granting fees and expenses in the sum of $11,511.41 will not be altered.

*Clarence and Marion Holtkamp*, Case No. 87–827–D.

On November 3, 1987 counsel for the debtors submitted an application for allowance of attorney's fees and expenses in the

amount of $13,262.36 for the period of February 1, 1987 through September 30, 1987. On December 11, 1987 the court entered an order allowing fees and expenses in the sum of $12,746.86, thereby reducing the requested amount by $515.50. A notation was made on the order that hourly fees were reduced for travel and for duplicative work and lumping of services.

As has been the court's practice, hourly rates for travel time were reduced to $60.00 per hour on April 22, 1987 and August 20, 1987. The application indicated duplicative and undocumented services on March 26, 1987; April 21, 1987 and June 18, 1987. The more troubling aspect of the application was the repeated practice of lumping a variety of services performed by a paralegal in one category and for one block of time. Such a practice does not permit the court to determine the reasonableness of individual services. The court also noted the inconsistency in the hourly rates billed by attorney # 42. The key provided with the application indicated that attorney # 42 billed his services at $100 per hour. Throughout the application, however, the attorney's services were billed at $100, $110 and $125 an hour. No explanation is given for this variable billing or an increase in the hourly rate by the firm.

Rather than totally disallow compensation for services lumped together or those billed at a higher rate, the court has assessed the services performed at $125 per hour as opposed to $100 per hour and has reduced the application by one-half of that differential. The court observes that such a reduction is indeed generous in view of the standards set forth in the case law. Accordingly, the court will not alter its original order granting fees and expenses in the sum of $12,746.86.

*Douglas and Joan Cling*, Case No. 87–1241–D.

On September 8, 1987 counsel for the debtors submitted an application for allowance of attorney's fees and expenses in the amount of $5,753.56 for the period of April 1, 1987 through July 31, 1987. On December 11, 1987 the court entered an order allowing fees and expenses in the sum of $4,981.56, thereby reducing the requested amount by $772.80. A notation was made in the order that requested fees were reduced to $60.00 for travel time and undocumented calls and duplication.

As noted before, the court will reduce the hourly rate billed for travel time. The reduction, however, is meant to affect only actual driving time as that is considered a less productive activity. Upon reconsideration the court notes that travel time on May 31, 1987 and June 15, 1987 is lumped together with other services. Thus the original order reduced the entire entry to $60.00 per hour. The court will now only reduce the entry on May 31, 1987 to $60.00 for the appropriate driving time. The remaining activities noted will be compensable at the regular hourly rate. Moreover the travel entry on June 15, 1987 indicates that the estate was charged for "half travel". Accordingly, no further reduction will be made. The remaining reductions made were on the basis of undocumented activities. Throughout the application phone conferences were not adequately described. Accordingly, the hourly rate for such services is reduced to $60.00 per hour. After recalculation, the reductions total $272.00. Therefore, debtors' counsel are entitled to fees and expenses in the amount of $5,481.56 or $500.00 more than originally granted.

*Triple K Corporation*, Case No. 86–3347–D.

On October 21, 1987 counsel for the debtor submitted an application for allowance of attorney's fees and expenses in the amount of $1,899.30 for the period of April 1, 1987 through September 30, 1987. The application indicated that the court had previously ordered fees and expenses totalling $11,250.00. On December 30, 1987 the court entered an order allowing fees and expenses in the sum of $1,790.80, thereby reducing the requested amount by $108.50. A notation was made on the order indicating that the fees were reduced where the attorney had billed more per hour than

indicated on the firm summary sheet and for duplicative efforts.

In light of the above discussions with regard to other fee applications, the court need not further address its reasoning in this case. The reductions made to the fee request were proper, adequately explained and deminimus in relation to the total fees awarded. Accordingly, the court will not alter its original order granting fees and expenses in the sum of $1,790.80.

*Herbert and Twyla LaMaack,* Case No. 87–1430–D.

On November 19, 1987 counsel for the debtors submitted an application for allowance of fees and expenses in the amount of $5,636.52 for the period of April 1, 1987 through October 31, 1987. On December 30, 1987 the court entered an order allowing fees and expenses in the sum of $5,554.02, thereby reducing the requested amount by $82.50. A notation was made on the order that fees were reduced to $60.00 per hour on July 1, 1987 and October 6, 1987 for travel time.

The rationale for the reduction made for travel time has been discussed above and need not be repeated here. No alteration is warranted. It is noted that debtors' counsel have apparently made an attempt to provide more description in the individual entries of services performed.

## CONCLUSION AND ORDER

Based on the foregoing analysis, the court hereby finds that the orders entered in each of the cases in which the court sua sponte reduced the requested fees were proper. However, after reconsideration based upon the above discussed guidelines, the orders are altered as follows:

*Pothoven* —additional fees and expenses in the amount of $678.40 are ordered.

*Fisher* —additional fees and expenses in the amount of $392.00 are ordered.

*Ferguson* —additional fees and expenses in the amount of $161.50 are ordered.

*Herr* —no alteration.

*Egel* —no alteration.

*Holtkamp* —no alteration.

*Cling* —additional fees and expenses in the amount of $500.00 are ordered.

*Triple K Corporation* —no alteration.

*LaMaack* —no alteration.