**In re SPANJER BROTHERS, INC., Letterfab, Inc., Debtors.**

**Bankruptcy Nos. 95 B 02004, 95 B 02006.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Nov. 14, 1996.

See also 191 B.R. 738.

William L. Needler, William Needler & Associates, Ltd., Northbrook, IL, for William L. Needler & Associates, Ltd.

David A. Newby, D'Ancona & Pflaum, Chicago, IL, for Official Committee of Unsecured Creditors.

Andrew S. Adsit, Arnstein & Lehr, Chicago, IL, for Armstrong & Lehr.

Richard M. Fogel, Hopkins & Sutter, Trustee, Chicago, IL.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

These matters come before the Court on the final application of William L. Needler & Associates, Ltd. ("Needler"), attorney for Spanjer Brothers, Inc. and Letterfab, Inc. (the "Debtors"), for allowance of compensation and expense reimbursement, and on the amended application of Andrew S. Adsit ("Adsit"), as special counsel to the Debtors, for allowance of compensation and expense reimbursement. Joint objections have been filed to both applications by Richard M. Fogel, as Chapter 11 trustee of the Debtors' consolidated estates (the "Trustee") and the Official Committee of Unsecured Creditors for the consolidated estates (the "Committee"). For the reasons set forth below, the Court hereby sustains the objections in substantial part. Needler is awarded additional fees in the sum of $2,740.50 and none of the requested expenses are allowed. Adsit is awarded fees in the sum of $1,064.45 and reimbursed $10.50 for expenses.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain these matters pursuant to 28 U.S.C. § 1334 and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. These matters constitute core proceedings under 28 U.S.C. § 157(b)(2)(A) and (O).

## II. FACTS AND BACKGROUND

Most of the relevant background is contained in an earlier Opinion of the Court. See In re Spanjer Bros., Inc., 191 B.R. 738 (Bankr.N.D.Ill.1996). Therein Needler was allowed certain compensation and expense reimbursement for his representation of the Debtors through August 12, 1995. Needler's instant and final application covers the period from August 13, 1995 through July 15, 1996. See Exhibit No. 3. For such period Needler seeks an allowance of fees totaling $15,538.75, plus expense reimbursement of $1,332.67. Id. Adsit, who was appointed special counsel and authorized by the Court to so act effective April 20, 1995, seeks fees of $5,436.25, plus expense reimbursement of $41.50 for the period from February 1, 1995 through May 25, 1995. See Exhibit Nos. 4 and 6. Needler also seeks allowance of $47,723.51 in fees previously disallowed by the Court regarding his first interim application.

The Trustee and the Committee jointly object to any additional allowance for Needler. They contend that neither the Committee nor the Trustee requested Needler to perform any services either for them or the Debtors during the period in question and that all other interested parties were adequately represented by other counsel. Rather, they contend that Needler's efforts unnecessarily duplicated the Trustee's efforts; the actions taken were not authorized; and Needler was volunteering such work, and charging excessive fees for non-legal work. They argue that none of Needler's work had any effect on the eventual sale of the Debtors' property or business as a going concern, and that some of his efforts were more in the nature of a business broker, rather than as an attorney. Moreover, they point out that Needler's final application includes time charged for preparing Adsit's original application which was so void of detail that it had to be amended. The Trustee and Committee conclude that none of Needler's services in this application benefitted the Debtors' consolidated estates in any way and thus the request should be entirely disallowed.

Not surprisingly, Needler maintains that all of his services in representing the Debtors should be allowed, including that previously disallowed by the Court from the prior interim application. Notwithstanding the events leading to the appointment of the Trustee, Needler argues that the Debtors were entitled to be represented thereafter and that all his services and expenses were both reasonable and necessary.

In addition, the Trustee and the Committee jointly object to Adsit's amended final application, by which he seeks the requested compensation and expense reimbursement for his services to negotiate the sale of a certain parcel of real estate (the "Chicago Property") in which the Debtors and certain of their insiders had various interests. The hoped for sale was to be to the Chicago Metropolitan Housing Corporation. The objectors contend that the Chicago Property was eventually sold, but not to an entity procured by Adsit. Moreover, they note that although the original retention application sought retroactive employment for Adsit dating back to January 31, 1995, the Court only authorized the retention effective as of April 20, 1995. Thus, of the total $5,436.25 in fees and $41.50 in expenses sought by Adsit, $4,031.25 and $28.00 respectively were incurred prior to April 20, 1995 and, as such, are not compensable.

Regarding the balance sought by Adsit, the objectors note that in the amended application, Adsit billed his time in inflated minimum increments of .25 hours; no lower billing rate was shown (only Adsit billed at an hourly rate of $215.00); and the only benefit to the estates demonstrated by Adsit's amended application was his negotiation of a listing agreement with a reputable broker who was employed by the Trustee. They concede that Adsit's two hours of time spent on that task for $430.00 was "marginally" compensable, and that should be prorated between the bankruptcy estates' interest in the Chicago Property (allegedly 83.3844%) and the insiders' interest therein (allegedly 16.6156%) and reduced accordingly.

Somewhat surprisingly to the Court, Needler responded for Adsit to these objections. Needler contends that Adsit's work did assist in input for the Debtors' plan of reorganization and disclosure statement. He argues that the Committee has not objected to the $2,500.00 retainer requested by Adsit, which the Debtors did not pay. He maintains that amount should be the minimum allowed for this application, and it should be retroactively approved to January 1, 1995, as originally requested, because the benefits should be apparent to all. According to Adsit's supporting affidavit, as well as his testimony at trial, he met the Debtors' shareholders, directors, and officers; suggested the Chicago Housing Authority or the Chicago Metropolitan Housing Development Corporation as prospective purchasers for the Chicago Property; prepared a presentation therefor; met with the executive director of the latter entity and a broker of the former entity in that regard; and subsequently represented the Debtors in connection with the preparation and negotiation of an exclusive listing agreement with a real estate brokerage firm toward potential sale of the Chicago Property.

An evidentiary hearing was held on November 7, 1996. These matters were thereafter taken under advisement.

### III. STANDARDS APPLICABLE TO FEE APPLICATIONS

#### A. Compensation Allowances

Generally, professional persons seeking compensation from the estate must first be authorized to be employed under 11 U.S.C. § 327 and Rule 2014 of the Federal Rules of Bankruptcy Procedure. Federal Rule of Bankruptcy Procedure 2016(a) requires that "[a]n entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." Fed.R.Bankr.P. 2016(a). Interim fee awards are discretionary and are subject to reexamination and adjustment during the course of the case, and the Court may review the case at its conclusion and take into account the results obtained in making a final allowance. *See In re Jensen–Farley Pictures, Inc.,* 47 B.R. 557 (Bankr.D.Utah 1985). Pursuant to 11 U.S.C. § 330, authorized employed professionals applying for fees must demonstrate that their services were actual, necessary, and reasonable.

The Court has a duty to independently examine the reasonableness of the fees requested. *In re Wyslak,* 94 B.R. 540, 541 (Bankr.N.D.Ill.1988); *In re Chicago Lutheran Hosp. Ass'n,* 89 B.R. 719, 734–35 (Bankr.N.D.Ill.1988). The burden of proof to

show entitlement to the fees requested is on Adsit and Needler. *See In re Kenneth Leventhal & Co.,* 19 F.3d 1174, 1177 (7th Cir. 1994); *In re Stoecker,* 114 B.R. 965, 969 (Bankr.N.D.Ill.1990); *In re Pettibone Corp.,* 74 B.R. 293, 299 (Bankr.N.D.Ill.1987). This burden must "not be taken lightly, especially given that every dollar expended on legal fees results in a dollar less that is available for distribution to the creditors." *Pettibone,* 74 B.R. at 299 (citations omitted). The fee application must stand or fall on its own merits. *See In re Wildman,* 72 B.R. 700 (Bankr.N.D.Ill.1987).

Furthermore, fees for a debtor's attorney are properly payable out of estate assets when a commensurate benefit to the estate is provided, but not for services which personally benefit only a Chapter 7 or 11 debtor. *See In re Ryan,* 82 B.R. 929, 931–32 (N.D.Ill.1987); *see also* 11 U.S.C. § 330(a)(4)(B). The 1994 amendment of the Bankruptcy Code to account for professionals' performance of administrative functions which might have no direct quantifiable benefit (*see* 11 U.S.C. §§ 330(a)(3)(C) and 330(a)(4)(A)(ii)(II)) did not alter the principle that compensable services must have been rendered for the estate's benefit. Unfortunately, the amended statute neither defines nor objectively sets the parameters of what is a compensable benefit to a debtor's estate.

Judge Barliant in *In re Lifschultz Fast Freight, Inc.,* 140 B.R. 482, 488 (Bankr. N.D.Ill.1992) aptly noted that the concept of "benefit to the estate" is not necessarily limited to an economic approach along the line that a dollar's worth of services must directly benefit the estate and bring a cash dollar into the estate in order to justify allowance of such dollar in cash compensation. The Court concurs with this view, in part, because the bankruptcy estate does not exist merely for esoteric purposes, but rather, serves as a fund from which allowed claims are to be paid in the order and priority established under the Bankruptcy Code. Thus, other factors besides the economic impact on the estate of actions taken should be considered in the "benefit to the estate" analysis.

One such nonexclusive factor to consider is whether the services rendered promoted the bankruptcy process or administration of the estate in accordance with the practice and procedures provided under the Bankruptcy Code and Rules for the orderly and prompt disposition of bankruptcy cases and related adversary proceedings. Additionally, the Court will continue to utilize the factors cited in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974): (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* at 717–19.

The Court may determine what is the reasonable amount of time a professional should have to spend on a given project. *Wildman,* 72 B.R. at 713 (citing *In re Shades of Beauty, Inc.,* 56 B.R. 946, 951 (Bankr.E.D.N.Y.1986), *aff'd in part, remanded in part,* 95 B.R. 17 (E.D.N.Y.1988)). Professionals will not be rewarded for inefficiency, nor fully compensated for spending an unreasonable amount of time on activities of little benefit to the estate. The Supreme Court in *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), ruled that "excessive, redundant or otherwise unnecessary" hours should be excluded from the fees sought. In other words, applicants should exercise good faith "billing judgment." *Id.* at 434, 103 S.Ct. at 1939–40; *see also In re Temple Retirement Community, Inc.,* 97 B.R. 333, 339 (Bankr.W.D.Tex.1989); *In re Pothoven,* 84 B.R. 579, 584 (Bankr.S.D.Iowa 1988).

Reasonable time spent does not necessarily include all time actually expended. *See In re Chas. A. Stevens & Co.,* 105 B.R. 866, 870–71 (Bankr.N.D.Ill.1989).

Hence, the exercise of good faith billing judgment comes into play. Compensation will not be awarded for nonproductive time, or for time spent on services that are duplicative of previously rendered services. Duplication of services constitutes an unreasonable expenditure of time and therefore is noncompensable. In determining what constitutes reasonable compensation, the Seventh Circuit has stated that "there are limits—measured by standards of reasonableness—to what a professional can demand in a bankruptcy case." *Leventhal,* 19 F.3d at 1178.

### B. *Expense Reimbursement*

■ An applicant bears the burden of establishing that he is entitled to certain expenses. *In re Convent Guardian Corp.,* 103 B.R. 937, 939 (Bankr.N.D.Ill.1989); *In re Affinito & Son, Inc.,* 63 B.R. 495, 497 (Bankr. W.D.Pa.1986). The Court will not assume any expense is necessary. *See In re Lindberg Prods., Inc.,* 50 B.R. 220, 221 (Bankr. N.D.Ill.1985). An expense is necessary if it was incurred because it was required to accomplish the proper representation of the client. *See Wildman,* 72 B.R. at 731.

### IV. *DISCUSSION*

#### A. *Needler's Fee Application*

##### 1. *Previously Disallowed Fees and Expenses*

■ At the outset, the Court has reconsidered the disallowance of Needler's fees, as discussed at length in the prior Opinion, which detailed the various reasons for only allowing a portion of his first interim request. For the reasons stated therein, the Court disallowed a substantial portion of that request. *See Spanjer,* 191 B.R. at 752–60. Needler seeks an award of that disallowed portion. Needler testified that in his opinion, his representation of both Spanjer Bros., Inc. and Letterfab, Inc. did not constitute an actual conflict of interest, and thus, the Court incorrectly disallowed the requested compensation. The Court disagrees and stands by its earlier ruling for the reasons stated therein, and will not award the previously disallowed $47,723.51 in fees and expenses because prior to the substantive consolidation

of the estates, Spanjer undisputedly was owed a net intercompany account payable by Letterfab. The Court did not authorize Needler to represent Spanjer prior to the substantive consolidation of the two estates. Rather, the Court found that representation of both Debtors was a statutory conflict of interest because of such intercompany debt. Under 11 U.S.C. § 327(a), Needler represented Letterfab which held an economic interest adverse to Spanjer. Consequently, the Court did not authorize Needler's employment as attorney for Spanjer due to his inability to meet the second of the two prongs of § 327(a). To allow all the previously disallowed interim fees, as Needler argues, would effectively ignore the second prong and requirement of § 327(a) which the Court cannot and should not properly do. Although perhaps impractical at times, application of the two requirement of § 327(a) is mandatory and a retention order is needed before an appropriate interim or final order for compensation under either §§ 331 or 330 is appropriate. *See In re Grabill Corp.,* 113 B.R. 966 (Bankr.N.D.Ill.1990), *aff'd,* 135 B.R. 835 (N.D.Ill.1991), *aff'd,* 983 F.2d 773 (7th Cir.1993). Professional retention requirements under § 327(a) are a matter for possible remedial legislation by Congress in the future, and not something under the existing statutory scheme for this Court to ignore. No further discussion on this aspect of the instant final application is needed or warranted.

#### 2. *Compensation*

The instant application begins in time the day after the prior interim application period terminated. Needler seeks compensation for a total of 102.80 hours of firm time: 75.50 hours for Needler's services; 22.30 hours for his travel time; and 5.0 hours for a paralegal's time. Needler billed this time at the hourly rates of $175.00 for his services; $87.50 for his travel time; and $75.00 for the paralegal's time. The work performed is set forth in three categories: (1) administration of the Chapter 11 case, creditor meetings, normal debtor-in-possession matters, actions in hiring of professionals, and miscellaneous motions and other general Chapter 11 admin-

istrative matters (85.10 hours for $12,703.75 in fees); (2) cash collateral matters, LaSalle Bank claim, and meetings relative thereto (4.20 hours for $560.00 in fees); and (3) matters relating to sale of assets (13.50 hours for $2,012.50 in fees).[1]

Further, Needler requests that the Court allow the final application to be supplemented for "time not listed for the days of November 27, and November 28, 1996" [sic]. Those dates were the time of the trial on Needler's partially disallowed interim application. No supplementation or documentation of the time expended on those dates has been provided to the Court. Thus, the Court concludes that Needler is not pursuing additional compensation for that time and none will be allowed. Needler has offered no explanation in the application or at the hearing as to why these services have not been documented. Without documentation of the services rendered, the Court cannot allow any fees for services rendered on those two days.

Needler summarily contends that all of his work benefitted the Debtors' estates and that although the Trustee was appointed for cause, the Debtors were entitled to be represented by counsel. The principal thrust of the objections is that none of Needler's work was of any benefit to the estates, but rather was duplicative of the Trustee's work and that of his attorneys after his appointment. The objectors specifically cite to *In re Xebec*, 147 B.R. 518, 523 (9th Cir. BAP 1992); *In re TS Indus., Inc.*, 125 B.R. 638, 643–44 (Bankr. D.Utah 1991); *In re Sugarman*, 137 B.R. 391, 392–93 (Bankr.S.D.Cal.1992); and *In re Stoecker*, 114 B.R. 965, 970 (Bankr.N.D.Ill. 1990) for the proposition that the Court must consider whether counsel for a debtor duplicated the duties of either the case trustee or his counsel; whether the services obstructed or impeded the administration of the estate; and whether a debtor's counsel's actions are

consistent with the debtor's duties under 11 U.S.C. § 521.

The Court will examine whether Needler's services were reasonably likely to benefit the Debtors' estates or if they were necessary to the administration of the cases. The Debtors' duties under § 521 include the filing of schedules and creditor lists, cooperation with the trustee, surrendering all property of the estate and books and records to the trustee, and appearance at the 11 U.S.C. § 341 meeting of creditors. *See* 11 U.S.C. § 521. By the time covered in the instant application, schedules had been prepared and filed, Needler did not facilitate transfer of the Debtors' property or books and records to the Trustee, nor did he render any requested legal services to the Trustee or the Committee at their request—they were separately represented by their own attorneys. Consequently, none of the services performed by Needler were undertaken to assist the Debtors in fulfilling their § 521 statutory duties.

The Court will, however, allow Needler's time requested for nine separate phone calls and conversations with the Trustee. The transition of the administration of the estates from the Debtors to the Trustee necessarily involved some minimal contacts and communications between Needler and the Trustee. That the Trustee considered them so inconsequential that he did not deem them worthy of recording does not mean they did not occur. Some of these entries were lumped with other work performed, but the Court will allow the compensation requested, notwithstanding the objections and the lack of corresponding time entries in the Trustee's records. Accordingly, 2.50 hours of Needler's time for his phone calls and conversations with the Trustee will be allowed for a total of $437.50 in fees (2.50 hours × $175.00 per hour).[2]

---

1. The fees sought in these various categories do not equal $15,538.75, the total amount Needler seeks. Rather, these figures total $15,276.25, which leaves a $262.50 discrepancy. The Court cannot correct an applicant's arithmetical lack of reconciliation.

2. The following entries comprise the nine allowed conversations:

| DATE | HOURS EXPENDED | AMOUNT SOUGHT |
|---|---|---|
| 08/14/95 | .30 | $ 52.50 |
| 08/23/95 | .25 | 43.75 |
| 08/24/95 | .40 | 70.00 |
| 08/29/95 | .40 | 70.00 |
| 09/06/95 | .35 | 61.25 |
| 09/26/95 | .15 | 26.25 |
| 10/18/95 | .20 | 35.00 |

Next, the Court will address the objection to any fees sought by Needler for the time he expended regarding his first interim fee application. The objectors contend that because the Court sustained their objections in part and only allowed approximately one-half of Needler's fees, he should not be awarded for his efforts spent litigating that fee request. The objectors maintain that the total compensation request for this litigation is $8,250.00.[3] Further, the objectors state that there is no statutory basis in the Bankruptcy Code for the allowance of fees to an unsuccessful litigant for defending his request for fees.

■ The Court overrules this portion of the objection. The Court adheres to the line of cases that award fees incurred in the preparation and litigation of fee applications, but subject to some restrictions. *See Pettibone*, 74 B.R. at 304; *Wildman*, 72 B.R. at 711. The approximate $8,000 that Needler seeks was not only for defending the interim fee application, but also for preparation of the interim and final applications. Pursuant to *Pettibone* and *Wildman*, as applied by the Court, applicants may be awarded 5% of the total fees allowed for the preparation of the application. Needler requested approximately $90,000 in fees in the first interim application, but the Court allowed about one-half of that amount. The Court will only award 5% of the total fees awarded, not the total requested. Five percent of $45,000 is $2,250. Accordingly, the Court awards Needler $2,250 for the time spent on the interim and final fee applications. The remainder the Court finds to be excessive and thus, not allowable as not beneficial to the estates. *See Friedman v. Melp, Ltd. (In re Melp)*, 179 B.R. 636, 640–41 (E.D.Mo.1995) (Chapter 11 debtor's attorney who performed services after appointment of trustee could not recover fees incurred in defending fee award on appeal as the work performed in defending the

fees did not benefit the estate), *appeal dismissed*, 79 F.3d 747 (8th Cir.1996). The Court notes that pursuant to the first interim fee application, Needler expended 4.50 hours preparing that application, and sought and was awarded $787.50 for that time. *See Spanjer*, 191 B.R. at 755–56. An additional $2,250.00 for work performed on the interim and final applications is more than sufficient.

Further, Needler seeks $612.50 in compensation for the preparation of Adsit's final fee application.[4] The objectors argue that this amount should not be allowed because the original application was so deficient it had to be amended. The Court overrules this objection. As previously stated, the Court typically allows 5% of the total fees awarded for preparation of a fee application. Consequently, the Court awards Needler $53.00 ($1,064.45[5] × .05%) for the preparation of Adsit's fee application. Even though the application had to be amended because it was patently deficient, Needler is entitled to some compensation for the preparation of the original and amended applications.

■ As for the remainder of the fees requested, the Court finds that Needler's services did not benefit the Debtors' estates and were not necessary to the administration of the cases. Some of the time expended by Needler in the first and third categories consist of various phone calls and conferences with insiders and agents of the Debtors and various prospects for possible sales of the Debtors' assets or ongoing business operations. While these activities may have had some benefit to various parties, it is inadequate and insufficient for Needler to summarily conclude that merely because they were performed there was a benefit to the estates. On the contrary, the principal duty for administration of the bankruptcy estates and their assets passed from the Debtors to the Trustee upon his appointment. There is

| DATE | HOURS EXPENDED | AMOUNT SOUGHT |
|---|---|---|
| 11/06/95 | .20 | 35.00 |
| 11/15/95 | .25 | 43.75 |
| **TOTAL** | **2.50** | **$437.50** |

3. The objectors do not specify how they arrived at this figure. The Court, however, in its calculations, totaled the request for this fee litigation at

$8,853.75. In any event, the amount sought exceeds $8,000.00.

4. Adsit does not seek compensation for the preparation of his fee application.

5. The Court discusses in detail how it arrived at this figure later in this Opinion.

no demonstrated tangible or intangible benefit to the estates from most of Needler's services in these categories, especially in light of the fact that none of his efforts produced the buyers for the various assets of the Debtors. Exercise of a debtor's right to be represented does not necessarily always produce a compensable benefit to the estate. Hence, the Court finds that the remainder of Needler's services were not necessary to the administration of the estates, were not taken to assist the Debtors with their duties under § 521, and did not benefit the Debtors' estates. Therefore, the Court will not award any further compensation to Needler.

### 3. *Expenses*

■ The reimbursement request for the expenses totaling $1,332.67 is denied in its entirety as the application inadequately details those expenses. The separate line item entries indicate varying costs incurred for postage, photocopies, telephone charges, fax charges, and the cost of one transcript. What was sent by mail, to whom, when, and why is not disclosed; what was copied and why is not shown; who was called on what date, for how long, and on what matter is not revealed; what was faxed, to whom, and why is not shown; and for what purpose was the transcript needed is not detailed. The Court has long followed the guidelines set forth in *Convent Guardian.* 103 B.R. at 939. The requisite details are lacking from this expense reimbursement. Therefore, the Court will not reimburse any of the requested expenses. The objections thereto are hereby sustained.

### B. *Adsit's Fee Application*

### 1. *Compensation*

■ Adsit seeks compensation of $5,536.25 from the period February 1, 1995 through May 25, 1995. *See* Exhibit Nos. 4 and 6. As noted by the objectors, most of Adsit's time was expended prior to the authorized effective date of his retention, April 20, 1995. On April 20, 1995, the Debtors filed a motion to employ Adsit as special counsel. The motion specifically requested the entry of an order *nunc pro tunc* to January 31, 1995. The Court declined to enter the order with that retroactive effective date, but rather, authorized Adsit's employment on May 18, 1995, made effective as of April 20, 1995, the date the motion to employ Adsit was filed. *See* Exhibit No. 7. Thus, the Court did not authorize Adsit to perform any work prior to April 20, 1995. All such services and expenses provided by Adsit were unauthorized, and the Court will not allow same. The Court will not retrospectively allow any of the time expended prior to the time of the authorized retention because to do so would be to reward any delay or tardiness in promptly seeking retention. To allow bootstrapping of objected to fees paid at the expense of unsecured creditors undermines the policy in favor of prompt application for retention by professionals who will be seeking compensation from the bankruptcy estate. *See generally* 11 U.S.C. § 327 (prerequisite to the allowance of any fees or expenses that professional be employed); *In re Peoples Sav. Corp.,* 114 B.R. 151, 154 (Bankr.N.D.Ill.1990) ("In the absence of a court order approving the Applicant's employment, there is no statutory basis upon which the Court can make a fee award."). Although the Debtors' problems with the Committee surfaced early in the case, there was no constant stream of unending daily emergency court hearings which precluded either Adsit or the Debtors from seeking the appropriate order of retention earlier in the case at the time Adsit began his work in February 1995.

Review of the amended application which allocated Adsit's time to the various tasks he performed (which was not shown on the original application contrary to Bankruptcy Rule 2016(a)'s requirements) reveals that approximately 6.25 hours of his total time was expended on and after April 20, 1995. Some of the photocopied time sheet summaries appended as Exhibit C were cut off or incomplete and others may be missing. Thus, only $1,343.75 (6.25 hours × $215.00 per hour) of the application is appropriately allowable for work done after the effective date of authorized retention.

Although the objectors contend that only the amount of $430.00 should be compensated, attributable to Adsit's time regarding

retention of the real estate broker who ultimately obtained a buyer for the Chicago Property sold by the Trustee during his administration, the Court will allow the additional time after retention as reduced for Adsit's time spent in attempting to negotiate and present the Chicago Property for sale to the Chicago Housing Authority or the Chicago Metropolitan Housing Development Corporation. After all, that was the principal purpose for Adsit's special retention in the first place and his fees were not authorized on a contingent basis. Rather, he was retained on an hourly or lodestar mode of compensation.

In addition, Adsit has billed in minimal increments of .25 hours. Adsit testified that this method of billing is the practice of his law firm. Nevertheless, the Court has found this practice to be inflationary. *See In re Stoecker,* 114 B.R. at 976. Thus, a 5% reduction of $1,343,75 is appropriate, reducing the allowable fees to $1,276.56 ($1,343.75–$67.19).

Moreover, only 83.3844% of the allowed fees will be charged against the consolidated estates in proportion to the relative interests in the Chicago Property, and the estates' proportionate receipt of the sales proceeds thereof. The Trustee at trial testified that approximately 16.6% of the Chicago Property is owned by nondebtor interests. Thus, 83.3844% × $1,276.56 equals $1,064.45 in allowed fees chargeable against the estates.

### 2. *Expenses*

Of the $41.50 in expenses sought, only the overnight delivery charge of $10.50 on June 5, 1995 to one of the Debtors was incurred after the effective retention date. That expense will be allowed as necessary, but not the unauthorized expenses incurred prior to April 20, 1995.

### V. *CONCLUSION*

For the foregoing reasons, the Court hereby sustains the objections in substantial part to both fee applications. Needler is awarded the sum of $2,740.50 for fees and none of the requested expenses are allowed. Adsit is awarded the sum of $1,064.45 for fees and $10.50 for expenses.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.