**In re SPANJER BROTHERS, INC.,**
**Letterfab, Inc., Debtors.**

**Bankruptcy Nos. 95 B 02004, 95 B 02006.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Jan. 18, 1996.

Steven B. Towbin, David A. Newby, D'Ancona & Pflaum, Chicago, IL, for the Official Committee of Unsecured Creditors.

James C. Truax, pro se, Law Offices of James C. Truax, Chicago, IL.

William L. Needler, pro se, William L. Needler & Associates, Ltd., Northbrook, IL.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on the first interim allowance of compensation and

expense reimbursement filed by William L. Needler & Associates, Ltd. ("Needler") attorney for Spanjer Brothers, Inc. ("Spanjer") and Letterfab, Inc. ("Letterfab") (collectively the "Debtors"), and on the final application for allowance of compensation filed by James C. Truax ("Truax") co-counsel for the Debtors. The Official Committee of Unsecured Creditors (the "Committee") filed objections to both applications. For the reasons set forth below, the Court hereby sustains in part and denies in part the Committee's objections. Needler is awarded fees in the sum of $44,875.00 and reimbursed $3,047.01 for his expenses. Truax is awarded fees in the sum of $1,683.25. The Court allows Truax to draw down an additional $433.25 of the $2,500.00 retainer he previously received. The remainder of the retainer, however, namely $816.75 must be disgorged and turned over to the Chapter 11 trustee.

## I. *JURISDICTION AND PROCEDURE*

The Court has jurisdiction to entertain these fee applications pursuant to 28 U.S.C. § 1334(b) and Local General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. These matters are core proceedings under 28 U.S.C. § 157(b)(2)(A) and (O).

## II. *FACTS AND BACKGROUND*

On January 31, 1995, the Debtors filed voluntary Chapter 11 petitions. At the time of the bankruptcy filing, Spanjer was a 99 year-old manufacturer of a variety of signs. Letterfab was a wholly owned subsidiary of and manufactured and sold materials to Spanjer. Spanjer, as the parent of Letterfab, purchased the entire output of Letterfab, and Letterfab sold exclusively to Spanjer. The officers of Letterfab were officers and shareholders of Spanjer. On February 21, 1995, these cases were ordered to be jointly administered under Federal Rule of Bankruptcy Procedure 1015(b), and were thereafter substantively consolidated on April 28, 1995. The Committee was initially appointed by the United States Trustee in the Spanjer case alone. After the two cases were substantively consolidated, the Committee was authorized to continue to represent the interests of all unsecured creditors.

Prior to and after the filing of the Spanjer and Letterfab petitions, Needler acted as counsel to both Debtors simultaneously. On March 23, 1995, before substantive consolidation of the estates, upon objection by the United States Trustee pursuant to 11 U.S.C. § 327(c), the Court refused to permit Needler to represent both Debtors because Letterfab was a creditor of Spanjer, and such representation constituted a conflict of interest under 11 U.S.C. § 327(a) and (c). In representing Spanjer while it owed a substantial intercompany receivable to Letterfab, Needler was representing an economic interest adverse to Letterfab's estate because Letterfab had an interest in collecting the over $450,000 account receivable, which Spanjer and its creditors would rather not pay. As a result, on April 4, 1995, the Court authorized the employment of Truax as attorney for Spanjer. On April 6, 1995, the Court authorized the employment of Needler as attorney for Letterfab effective *nunc pro tunc* to the date of the filing of the cases, January 31, 1995. After substantive consolidation of the cases on April 28, 1995, Needler provided services to and represented both Debtors with minimal assistance from Truax.

On April 20, 1995, Needler filed a plan of reorganization. *See* Committee Exhibit No. 1. This plan generated adverse reaction from the Committee. Shortly thereafter, the Committee filed a motion for the appointment of a Chapter 11 trustee. The Debtors, through Needler and Truax, opposed the motion. After a two day contested trial, on May 26, 1995, the Court entered an order directing the appointment of a trustee under 11 U.S.C. § 1104(a)(2). See Committee Exhibit No. 9. On May 31, 1995, after the Court had ordered the appointment of a trustee, Needler filed a disclosure statement and an amended plan of reorganization. On June 1, 1995, the Court approved the United States Trustee's appointment of Richard M. Fogel as the Chapter 11 trustee (the "Trustee") of both Debtors' estates. Needler filed a supplemental disclosure statement on June 2, 1995. On June 9, 1995, Needler filed a notice of appeal on behalf of the Debtors regarding

the Court's May 26 and June 1, 1995 orders. On June 9, 1995, Needler also filed an amended plan of reorganization and consolidated disclosure statement along with a supplement with exhibits to the disclosure statement. The appeal was withdrawn on August 3, 1995.

■ Needler filed the instant fee application seeking allowance of compensation in the sum of $90,098.13 and reimbursement of expenses in the amount of $5,547.39 for his representation of both Debtors from December 21, 1994 through August 12, 1995. Truax filed his fee application seeking allowance of compensation in the amount of $3,406.25 for this representation of Spanjer from March 28, 1995 through April 24, 1995 and his representation of both Debtors from April 24, 1995 through August 26, 1995. The Committee filed objections to both fee applications.[1] On September 26, 1995, the Court entered a Prehearing Order setting these contested fees applications for hearing to commence on November 27, 1995. The Prehearing Order

1. An objection to both fee applications was filed by LaSalle National Bank, the Debtors' secured creditor. That objection was subsequently withdrawn on November 27, 1995, after the Bank's claim was satisfied in full from payment through sale proceeds of assets sold by the Trustee.

2. The Court did not allow Truax and Needler to amend their witness list, as same would have violated the Prehearing Order. The Court will not allow any witness who was not listed on a timely filed witness list testify. *See generally In re Maurice*, 21 F.3d 767, 772 (7th Cir.1994). The fact that Truax and Needler filed an amended witness list after the due date was not sufficient. The Court's decision not to allow Needler or Truax to testify was based solely on their violation of the Prehearing Order. The Court is cognizant of Rule 3.7(a)(3) of the Rules of Professional Conduct for the Northern District of Illinois, applicable here via Local Bankruptcy Rule 608, which allows a lawyer to testify if the testimony relates to the nature and value of legal services rendered in the case by the lawyer or the firm to the client.

3. Section 327 provides in relevant part:
 (a) Except as otherwise provided in this section, the [debtor in possession], with the court's approval, may employ one or more attorneys ... or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor in possession] in carrying out the [debtor in possession's] duties under this title.

required, *inter alia*, that "[a]t least fourteen (14) days prior to the hearing date, the parties are to exchange and file with the Court the names of all witnesses they intend to present at the hearing together with a brief summary of the area of testimony said witness will present." (emphasis supplied). Truax and Needler complied with most of the Prehearing Order, but belatedly sought to amend their witness list to include themselves as witnesses.[2] The Court took the matter under advisement after a two day trial.

## III. STANDARDS APPLICABLE TO FEE APPLICATIONS

### A. Compensation Allowances

■ Generally, professional persons seeking compensation from the estate must first be authorized to be employed under 11 U.S.C. § 327[3] and Rule 2014 of the Federal Rules of Bankruptcy Procedure.[4] Federal

(c) In a case under chapter ... 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest. 11 U.S.C. § 327(a) and (c).

4. Bankruptcy Rule 2014(a) states in part:
 An order approving the employment of attorneys ... or other professionals pursuant to § 327 ... of the Code shall be made only on application of the [debtor in possession].... The application shall be filed and ... transmitted by the applicant to the United States trustee. The application shall state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee or any person employed in the office of the United States trustee. The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, or any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Rule of Bankruptcy Procedure 2016(a) requires that "[a]n entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." FED.R.BANKR.P. 2016(a). Interim fees may be allowed as prescribed by 11 U.S.C. § 331,[5] which utilizes the same substantive standards set forth in 11 U.S.C. § 330. Interim fee awards are discretionary and are subject to reexamination and adjustment during the course of the case, and the Court may review the case at its conclusion and take into account the results obtained in making a final allowance. *See In re Jensen–Farley Pictures, Inc.*, 47 B.R. 557 (Bankr. D.Utah 1985).

 Pursuant to § 330, authorized employed professionals applying for fees must demonstrate that their services were actual, necessary, and reasonable.[6] Section 330 was recently amended by the Bankruptcy Reform Act of 1994, which became effective October 22, 1994 and is applicable here. *See* Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, 108 Stat. 4106.[7] The Court has a duty to independently examine the reasonableness of the fees requested. *In re Wyslak*, 94 B.R. 540, 541 (Bankr.N.D.Ill.1988); *In re Chicago Lutheran Hosp. Ass'n*, 89 B.R. 719, 734–35 (Bankr.N.D.Ill.1988).

 The burden of proof to show entitlement to the fees requested is on Truax and Needler. *In re Kenneth Leventhal & Co.*, 19 F.3d 1174, 1177 (7th Cir.1994); *In re Stoecker*, 114 B.R. 965, 969 (Bankr.N.D.Ill.1990); *In re Pettibone Corp.*, 74 B.R. 293, 299 (Bankr.N.D.Ill.1987). This burden must "not be taken lightly, especially given that every dollar expended on legal fees results in a dollar less that is available for distribution to the creditors." *Pettibone*, 74 B.R. at 299 (citations omitted). The fee application must stand or fall on its own merits. *See In re Wildman*, 72 B.R. 700 (Bankr.N.D.Ill.1987).

 Furthermore, fees for a debtor's attorney are properly payable out of estate assets when a commensurate benefit to the estate is provided, but not for services which

FED.R.BANKR.P. 2014(a).

5. Section 331 provides in part:

A ... debtor's attorney, or any professional person employed under section 327 ... of this title may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is provided under section 330 of this title. After notice and a hearing, the court may allow and disburse to such applicant such compensation or reimbursement.

11 U.S.C. § 331.

6. Section 330 states in relevant part:

(a)(1) After notice to the parties in interest ... the court may award to a ... professional person employed under section 327....—

(A) reasonable compensation for actual, necessary services rendered by the ... professional person, or attorney and by any paraprofessional person employed by any such person; and

(B) reimbursement for actual, necessary expenses.

. . . . .

(3) In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

(4)(A) Except as provided in subparagraph (B), the court shall not allow compensation for—

(i) unnecessary duplication of services; or

(ii) services that were not—

(I) reasonably likely to benefit the debtor's estate; or

(II) necessary to the administration of the case.

11 U.S.C. § 330.

7. The relevant case law as applied and construed by this Court, although authored prior to the amendment of § 330, is not altered, but rather, is reinforced by the changes made to that section.

personally benefit only the debtor. *See In re Ryan,* 82 B.R. 929, 931–32 (N.D.Ill.1987). The amendment of the Bankruptcy Code to account for professionals' performance of administrative functions which might have no direct quantifiable benefit (*see* 11 U.S.C. §§ 330(a)(3)(C) and 330(a)(4)(A)(ii)(II)) did not alter the principle that compensable services must have been rendered for the estate's benefit. Unfortunately, the amended statute neither defines nor objectively sets the parameters of what is a compensable benefit to the debtor's estate.

■ Judge Barliant in *In re Lifschultz Fast Freight, Inc.,* 140 B.R. 482, 488 (Bankr. N.D.Ill.1992) aptly noted that the concept of benefit to the estate is not necessarily limited to an economic approach along the line that a dollar's worth of services must directly benefit the estate and bring a cash dollar into the estate in order to justify allowance of one dollar cash compensation. The Court concurs with this view in part because the bankruptcy estate does not exist merely for esoteric purposes, but rather, serves as a fund from which allowed claims are to be paid in the order and priority established under the Bankruptcy Code. Thus, other factors besides the economic impact on the estate of actions taken should be considered in the benefit to the estate analysis.

■ One such nonexclusive factor to consider is whether the services rendered promoted the bankruptcy process or administration of the estate in accordance with the practice and procedures provided under the Bankruptcy Code and Rules for the orderly and prompt disposition of bankruptcy cases and related adversary proceedings. Additionally, the Court will continue to utilize the factors cited in *Johnson v. Georgia Highway*

*Express, Inc.,* 488 F.2d 714 (5th Cir.1974). The twelve *Johnson* factors are as follows: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* at 717–19.[8]

■ The Court may determine what is the reasonable amount of time a professional should have to spend on a given project. *Wildman,* 72 B.R. at 713 (citing *In re Shades of Beauty, Inc.,* 56 B.R. 946, 951 (Bankr.E.D.N.Y.1986), *aff'd in part, remanded in part,* 95 B.R. 17 (E.D.N.Y.1988)). Professionals will not be rewarded for inefficiency, nor fully compensated for spending an unreasonable amount of time on activities of little benefit to the estate. The Supreme Court in *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), ruled that "excessive, redundant or otherwise unnecessary" hours should be excluded from the fees sought. In other words, applicants should exercise good faith "billing judgment." *Id.* at 434, 103 S.Ct. at 1939–40; *see also In re Temple Retirement Community, Inc.,* 97 B.R. 333, 339 (Bankr.W.D.Tex.1989); *In re Pothoven,* 84 B.R. 579, 584 (Bankr.S.D.Iowa 1988).

■ Reasonable time spent does not necessarily include all time actually expended.

---

**8.** The first, third, and eighth factors are most important for purposes of these fee applications. There was nothing new or unusually difficult about these cases. There is no evidence that either Truax or Needler was precluded from other more lucrative employment. There really is no "customary" fee for representing Chapter 11 debtors in this district. The fees sought were on an hourly rate, not on any contingent fee arrangement. There were no special time limits imposed by the Debtors or the circumstances. Both Needler and Truax are adequately experienced and able to represent the Debtors, and

their reputations speak for themselves. These cases are no more undesirable than the usual cash-strapped failing Chapter 11 debtor scenarios presented to the Court. There was no unusual nature or length of the applicants' professional relations with the Debtors. There are no standard compensation awards in this district for Chapter 11 debtor representation—each case is unique and must be evaluated on its own. The *Johnson* factors are referenced in Rule 1.5(a) of the Rules of Professional Conduct for the Northern District of Illinois, applicable here via Local Bankruptcy Rule 608.

Hence, the exercise of good faith billing judgment comes into play. Compensation will not be awarded for nonproductive time, or for time spent on services that are duplicative of previously rendered services. Duplication of services constitutes an unreasonable expenditure of time and therefore is noncompensable. In determining what constitutes reasonable compensation, the Seventh Circuit has stated that "there are limits—measured by standards of reasonableness—to what a professional can demand in a bankruptcy case." *Leventhal,* 19 F.3d at 1178.

### B. *Expense Reimbursement*

■■■■■ An applicant bears the burden of establishing that he is entitled to certain expenses. *In re Convent Guardian Corp.,* 103 B.R. 937, 939 (Bankr.N.D.Ill.1989); *In re Affinito & Son, Inc.,* 63 B.R. 495, 497 (Bankr. W.D.Pa.1986). The Court will not assume any expense is necessary. *See In re Lindberg Products, Inc.,* 50 B.R. 220, 221 (Bankr. N.D.Ill.1985). An expense is necessary if it was incurred because it was required to accomplish the proper representation of the client. *Wildman,* 72 B.R. at 731.

### IV. *DISCUSSION*

The polarity of the parties' positions is reflected in the evidence. For example, the testimony of Clayton Spanjer, the Chief Executive Officer of the Debtors, was that all legal services provided by both Needler and Truax were authorized by the Debtors' management. By comparison, the Trustee was of the opinion that some unquantified portion, but certainly not all, of Needler's services was both reasonable and necessary and provided benefit to the Debtors and therefore should be compensated. In marked contrast, one of the financial consultants retained by the Committee and the chairman of the Committee were of the opinion that the subject legal fees probably had negative or no value to the Debtors' estates. Thus, the

Court is once again confronted with the delicate and thorny issue of hotly contested fee applications.

### A. *Fee Request of Truax*

Truax seeks allowance and payment of $3,406.25 for services rendered by him and his paralegal. No expenses are sought to be reimbursed. Truax's fee application covers the period from March 28, 1995 through August 26, 1995. During this period, Truax spent 16.75 hours and his paralegal spent 17.50 hours for a total of 34.25 hours. Truax bills at $125.00 per hour and the time of his paralegal, Hugh Dunlop, is billed at $75.00 per hour. On September 13, 1995, the Court authorized Truax to draw down the sum of $1,250.00 against the $2,500.00 retainer he had previously received.

■■■■■ In his response to the Committee's objection, Truax seeks an additional $475.00 for responding to the objections. The Committee has objected to Truax's fees based on the following reasons: (1) Truax rendered services prior to the order authorizing his employment[9]; (2) the services that Truax performed did not provide a benefit to the Spanjer estate; (3) Truax's services were duplicative of Needler's time; and (4) Truax breached his fiduciary duties to the Spanjer estate, and thus, compensation should be denied in full, and all sums previously paid should be disgorged. The Court will address each category of services and the respective objections in turn.

### 1. *Category 1*

■■■■■ In this category, Truax expended services in connection with the administration of the Spanjer case, which include matters relating to his employment and retainer, cash collateral issues, and preparation of the fee application. Truax seeks fees of $1,662.50 for a total of 16.70 hours expended. Of the 16.70 hours, 14.20 hours were spent in connection with Truax getting employed and

---

9. The Court summarily overrules this objection. The time expended by Truax and his paralegal prior to April 4, 1995, the date of retention, amounts to 6 hours. The Court routinely awards compensation to attorneys for debtors for services performed prior to entry of an order of retention when that time expended relates to services performed in connection with employment. The time expended by Truax and his paralegal relates to seeking employment as well as becoming familiar with the Spanjer case. To deny Truax's fees would be in derogation of the routine practice in this Court.

preparing the fee application. The Committee asserts that 28% of Truax's total time spent and 49% of his paralegal's time was expended on Truax's employment and payment. The Committee has objected to this as excessive and of no benefit to the estate. The Court will sustain, in part, the Committee's objection.

The Court finds that the time spent on 03/28/95 wherein Truax and his paralegal expended a total of 2.70 hours to review, correct, and draft the motion to be employed, a motion to receive retainer, and an affidavit by Truax is excessive. These motions and affidavit were relatively simple, hence nearly "routine", and should not have taken an experienced lawyer like Truax or a paralegal like Dunlop 2.70 hours to prepare. Accordingly, the Court will disallow 2 hours expended by the paralegal at $75.00 per hour for a total disallowance of $150.00. The Court finds that the expenditure of over 14 hours to seek employment, obtain a retainer, and prepare this fee application is simply excessive, and therefore unreasonable and unnecessary. The Court will not allow 1 hour expended by the paralegal on 04/28/95 for assisting in the preparation of an order allowing Truax's retainer. Truax is a capable lawyer who can, without the assistance of a paralegal, draft such an order and letter of transmittal to the Court. Thus, the Court hereby disallows $75.00 for that time expended.

■ The Court notes that the Committee objected to Truax's employment and award of a retainer, thereby necessitating Truax to spend more time than if his employment had been uncontested. The Committee now complains that Truax spent an excessive amount of time on his retention. The problem is that Truax spent the time in response to the Committee's resistance. Seeking an order of retention and approval of a retainer are usually and should be among the first steps taken by a Chapter 11 debtor's attorney, and Truax will not be wholly penalized for his reasonable and necessary time expended.

■ On 04/21/95 Truax and his paralegal expended a total of 3 hours objecting to a motion of the Committee for payment of a retainer to the Committee's counsel and replying to the Committee's objection to

Truax's retainer. The Court ultimately overruled Truax's objection to the Committee's counsel receiving a retainer. The Court finds that the expenditure of 3 hours with respect to these two matters is excessive. However, the Court will compensate Truax for a portion of the time expended. Hence, the Court hereby disallows the 2 hours spent by the paralegal at $75.00 per hour for a total disallowance of $150.00.

■ As for the preparation of the fee application, Truax seeks a total of $275.00 for 3 hours of time. The Committee contends that this amount is excessive in light of *In re Pettibone Corp.*, 74 B.R. 293, 304 (Bankr. N.D.Ill.1987), which establishes 3% of the total fees requested as the reasonable amount that should be allowed for preparation of the fee application. The Committee points out that the $275.00 sought by Truax would be justified if he sought fees of over $9,100.00. The Committee argues that in light of the $3,406.25 in fees sought, Truax should only be allowed approximately $100.00 for the preparation of the fee application. The Court will follow the *Pettibone* 3% limit and will only allow $102.00 for the preparation of the fee application. Truax's fee application consists of four pages of narrative details followed by two pages of detailed time entries. This fee application is not lengthy nor should it have required the expenditure of 3 hours. Accordingly, the Court sustains the objection of the Committee and disallows $173.00 for the time expended preparing the fee application.

### 2. *Category 2*

■ Pursuant to this category, Truax seeks fees of $1,387.50 for 13.50 hours performed in connection with the opposition to the motion for appointment of a trustee. The Committee objects to all of the time expended by Truax and his paralegal in this category. The Committee argues that these actions were taken at the behest of the current management and shareholders of the Debtors, and did not render a benefit to the estates. The Committee suggests that these fees should be denied in toto as there was no benefit conferred upon the Debtors' estates.

The Court will sustain a portion of the Committee's objection to these services. The Court will not allow any of the time expended on 05/23/95 for preparation of the motion in limine and the motion to strike the Committee's findings of fact and conclusions of law. Truax and his paralegal expended 8 hours for a total of $700.00.[10] Both motions were summarily denied and provided no benefit to the Debtors' estates.

■ Moreover, Truax requests fees for 2 hours expended on 05/26/95 to present the motion to strike. Truax, however, never argued the motion to the Court. Rather, Needler addressed the Court regarding this motion. Thus, the Court sees little benefit of paying Truax to silently sit in Court on a denied motion he did not argue. The Court disallows those 2 hours expended by Truax for a total of $250.00. Consequently, the Court sustains in part the Committee's objection, and disallows $950.00 for the services rendered in this category.

■ The Committee contends that some of the time expended by Truax is duplicative of Needler's time. The Court hereby overrules this objection. After closely examining Truax's fee application, the Court finds no instances of unnecessary duplication of efforts. Some meetings and conferences between Truax and Needler were necessary in order for Needler to advise Truax of the status of the cases and to coordinate and collaborate on various motions and positions taken by the parties.

■ Furthermore, the Committee has lodged a blanket objection to Truax's fees on the basis that he breached his fiduciary duties to the Spanjer estate. The Committee contends that Truax represented the interests of the Spanjer family and management to the exclusion of the interests of the estate and its creditors by opposing the appointment of a trustee. The Committee argues that for this reason alone, all compensation should be denied and any monies previously paid should be disgorged.

■ The Court hereby overrules the Committee's objection to Truax's fees on this basis. The record is devoid of any evidence that Truax directly or indirectly represented any member of the Spanjer family or its management individually. Rather, all of the unrebutted testimony at the trial was that Truax only represented the Spanjer estate per the directions of its management. While it is true that "[c]ounsel for a Chapter 11 debtor owes a fiduciary duty to the corporation ... as an entity and represents its interests, not those of its principals," *In re Grabill,* 113 B.R. 966, 970 (Bankr.N.D.Ill.1990) (citations omitted), *aff'd, Grabill Corp. v. Pelliccioni,* 135 B.R. 835 (N.D.Ill.1991), *aff'd,* 983 F.2d 773 (7th Cir.1993), the mere fact that an attorney for a debtor opposes and loses a motion for the appointment of a trustee under § 1104(a)(2) does not *ipso facto* demonstrate that the attorney is representing the interests of the debtor's principals and management to the exclusion of the creditors, and thus breaches a fiduciary duty owed to the debtor. The Court rejects the Committee's inference that any time counsel for a Chapter 11 debtor opposes the appointment of a trustee, same is being done for self-serving or improper purposes. After all, an attorney is obliged to follow the directions of his client. There was no evidence proffered to show that Truax acted other than at the direction of Spanjer's managing officers and directors.

Pertinent to this claimed conflict issue, common to both fee applications, is Rule 1.13(a) of the Rules of Professional Conduct for the Northern District of Illinois, which provides that when a lawyer is employed by an organization, he represents the organization which acts through its duly authorized constituents. The Comments to this Rule state:

> When constituents of the organization make decisions for it, the decisions ordinarily must be accepted by the lawyer even if their utility or prudence is doubtful. *Decisions concerning policy and operations, including ones entailing serious risk, are not as such in the lawyer's prov-*

---

**10.** This figure was derived by Truax's 2 hours at $125.00 per hour for a total of $250.00 and his paralegal's 6 hours at $75.00 per hour for a total of $450.00.

*ince.* However, different considerations arise when the lawyer knows that the organization may be substantially injured by action of a constituent that is in violation of law.

(emphasis supplied).

It was not a violation of law for the Debtors' management to oppose the appointment of a Chapter 11 trustee. It was Needler's and Truax's duties as the Debtors' lawyers to defend against the Committee's motion upon instruction from management. Therefore, neither Truax nor Needler breached his fiduciary duty by opposing the appointment of a trustee.

The Court therefore rejects the contention that a debtor's attorney who opposes appointment of a trustee, and loses, should not receive any compensation for this time expended fighting that appointment. In Chapter 11 cases, debtors are usually left to run and manage the business of the estate, hence the term debtor in possession. The appointment of a trustee is not the norm, but rather, the exception. Consequently, when a debtor in possession resists the appointment of a trustee, and a trustee is eventually appointed, the Court will not automatically disallow all fees sought by the losing attorney for the debtor in possession. Conversely, the Court will not necessarily allow all fees for the winning attorney for a debtor in possession who successfully resists a motion for appointment of a trustee. Neither Truax nor Needler undertook to represent the Debtors on a contingent fee basis. The Debtors' loss of the trustee appointment motion did not effectively convert the compensation arrangement to a contingent fee based on the success in defending such motion.

### 3. *Category 3*

■ In this category, Truax seeks payment of $356.25 for 4.50 hours expended on miscellaneous matters. The Committee objects to 3 hours expended by Truax's paralegal researching the "legal effect of bar dates on listed creditors." At the hearing, Hugh Dunlop, the paralegal, testified that he was asked by Truax to perform research because the Committee had sought a bar date for the filing of claims. Dunlop testified that, in his opinion, the motion was peculiar because he did not think that all creditors had to file a proof of claim by a date certain. According to Dunlop, he was looking for case law that demonstrated that not all creditors had to file proofs of claim. The Court disallows the time expended as excessive and unreasonable. Whether a creditor of a Chapter 11 debtor must file a proof of claim, unless the claim is scheduled or unliquidated, disputed or contingent, *see* 11 U.S.C. § 1111(a), is a basic bankruptcy concept that should not warrant 3 hours of research. Consequently, the Court disallows the paralegal's 3 hours of time for a total of $225.00.

In conclusion, the Court hereby disallows a total of $1,723.00 of Truax's fees. The following table is a recapitulation of the fees disallowed in each category:

| Category | Fees Requested | Amount Disallowed | Total Amount Allowed in Category |
|---|---|---|---|
| 1 | $1,662.50 | $ 548.00 | $1,114.50 |
| 2 | $1,387.50 | $ 950.00 | $ 437.50 |
| 3 | $ 356.25 | $ 225.00 | $ 131.25 |
| Total | $3,406.25 | $1,723.00 | $1,683.25 |

On September 13, 1995, Truax was authorized to draw down the sum of $1,250.00 against the $2,500.00 retainer he received. The Court will allows Truax to draw down an additional $433.25 of that retainer. The remainder of the retainer, however, namely $816.75 must be disgorged and turned over to the Trustee.

■ As for the additional $475.00 that Truax seeks for the time expended in replying to the Committee's objection, the Court denies this request. There are no supporting time entries which demonstrate the necessity and reasonableness of the fees incurred. Hence, the Court cannot allow such requested fees absent the required explanation of the time expended and the services rendered as Bankruptcy Rule 2016(a) requires.

### B. *Fees Requested by Needler*

Needler seeks allowance and payment of $90,098.13 in fees and reimbursement of $5,547.39 for expenses. Needler's fee application covers the period from December 21, 1994 through August 12, 1995. During this

time, Needler and his paralegal expended 570.90 hours.

### 1. *Compensation Requested*

Needler's fee application shows that his services are primarily comprised of the preparation of the petitions and schedules, attending to administrative matters such as the payment of utility charges and pre-petition payroll, the drafting of two plans of reorganization, and the defense of the Committee's motion for the appointment of a Chapter 11 trustee.

### a. *Simultaneous Representation of Spanjer and Letterfab*

 Initially, the Court will deal with the Committee's first objection that Needler should not be compensated for representing Spanjer in derogation of the Court's order which found that Needler could not represent both Spanjer and Letterfab, as well as Needler's violation of 11 U.S.C. § 327. "The purpose of § 327(a) is to ensure that attorneys employed by the estate have no conflicts of interest with the estate.... [I]t is strictly enforced because it impacts the integrity of the bankruptcy system as a whole." In *re Tinley Plaza Assoc.*, 142 B.R. 272, 277 (Bankr.N.D.Ill.1992) (citation omitted). The remedies for violating § 327 are clear:

> If the court determines that an attorney does not meet the requirements of § 327(a), the debtor-in-possession's application to employ the attorney must be denied. If the violation occurs while the attorney is already employed by the estate, then the court must deny compensation for the period that the conflict existed.... Finally, the court has the discretionary authority pursuant to § 328(c) to deny compensation for any part of an attorney's services performed outside the conflict.

*Id.* at 279 (citation omitted).

This Court did not authorize Needler to represent the Spanjer estate for the period prior to substantive consolidation of the cases. Rather, the Court found that Needler's representation of both Spanjer and Letterfab was a conflict of interest because of the intercompany debt. Hence, prior to substantive consolidation of the cases, the Court only authorized Needler to represent Letterfab and Truax to represent Spanjer. Needler now seeks payment of fees and reimbursement of costs incurred while representing both Debtors—an action that this Court refuses to condone. To do otherwise would eviscerate the order denying his retention in Spanjer and ignore the plain mandate of § 327 which prohibits the representation of a debtor if the attorney represents an adverse interest to the estate. *See also Tinley Plaza,* 142 B.R. at 276–77; *In re Envirodyne Indus., Inc.,* 150 B.R. 1008, 1016–17 (Bankr.N.D.Ill.1993). Consequently, Needler's simultaneous representation of both Spanjer and Letterfab prior to substantive consolidation was done at his own peril. Needler prepared the petitions and schedules and was intimately aware of the intercompany debt and claim.

Accordingly, the Court disallows all fees and expense reimbursement requested by Needler in connection with his representation of Spanjer while he was simultaneously representing Letterfab. The Court did not authorize Needler to represent Spanjer prior to the substantive consolidation order entered on April 28, 1995, which prospectively made the conflict of interest moot, but not retrospectively. Even if Needler provided valuable services to the Spanjer estate, his violation of the Court's order and § 327 warrants disallowance of the fees and costs. *See In re Peoples Sav. Corp.,* 114 B.R. 151, 155 (Bankr. N.D.Ill.1990). Therefore, the $39,635.63 in compensation and $2,500.38 in reimbursement of expenses sought by Needler for the representation of Spanjer from December 21, 1994 through April 24, 1995 is disallowed.

 The Court will not exercise its discretion under § 328(c) [11], as the Committee

---

11. Section 328(c) provides:

Except as provided in section 327(c), 327(e), or 1107(b) of this title, the court may deny allowance of compensation for services and reimbursement of expenses of a professional person employed under section 327 or 1103 of this title if, *at any time* during such professional person's employment under section 327 or 1103 of this title, such professional person is not a disinterested person, or represents or

urges, and deny all fees and expenses sought by Needler as a sanction for his behavior. Denial of over $40,000.00 in fees and expenses is sanction enough. Moreover, it would be an unnecessarily harsh application of this Court's equitable discretion to deny allowance of all of Needler's fees.

### b. *Services Rendered Prior to the Order Authorizing Employment*

 The Committee further argues that Needler should not be compensated for any time expended prior to April 6, 1995, the date authorizing his employment. The Committee contends that because Needler did not indicate in the fee application that the order entered on April 6 was entered *nunc pro tunc,* he has failed to "meet his burden of proof." [12] The Court rejects the Committee's argument. The April 6, 1995 order speaks for itself and clearly provides that Needler's employment was effective *nunc pro tunc* to the filing date. Needler's failure to state that his employment was *nunc pro tunc* to the date of the filing of the petitions is not fatal, nor will it result in the denial of fees sought for services rendered on behalf of Letterfab prior to April 6, 1995.

### c. *Services Rendered on Behalf of Parties Other than the Debtors*

 Further, the Committee contends that Needler's services conferred no benefit to the Debtors because he ignored the interests of the Debtors in favor of other interests, such as the interests of shareholders. The Court hereby overrules the Committee's argument. The unrebutted testimony at the hearing was that Needler only represented Letterfab and then both Debtors after substantive consolidation, not any principals or shareholders of either Debtor. The unrefuted testimony at the hearing was that the shareholders of the Debtors were represented by separate counsel, not by Needler. The Committee's allegation that Needler acted on

behalf of anyone other than the Debtors is unfounded and unsupported by the evidence. That some of the shareholders were also a part of the Debtors' corporate management team does not obviate the fact that Needler took instructions and directions from the management of his clients, the Debtors. That management/shareholder/equity interests were benefitted by the Debtors' opposition to the appointment of a trustee and stayed on the payroll several months longer is not outcome determinative. The incidental saving of jobs is one of the stated goals of Chapter 11. *See* H.R.Doc. No. 93–137, 93d Cong., 1st Sess., pt. I at 237 (1973).

The Committee cites to *In re Kendavis Indus. Int'l, Inc.,* 91 B.R. 742 (Bankr. N.D.Tex.1988) to support its argument that Needler breached his fiduciary duties to the Debtors. The Committee has likened the facts in *Kendavis* to the case at bar. The Court disagrees that the situation in *Kendavis* is similar to this matter. In *Kendavis,* the court found that attorneys for the debtor were not disinterested under § 327 because the law firm represented principals of the debtor as well as the debtor itself. *Id.* at 752. There is no such evidence in the matter at hand, however, that Needler was representing management, directors, or shareholders of the Debtors. Hence, the *Kendavis* case is distinguishable.

Similarly, the other principal case relied upon by the Committee, *In re Blue Top Family Restaurant, Inc.,* 110 B.R. 777, 778 (Bankr.W.D.Pa.1990), is factually distinguishable. In the *Blue Top* case, the evidence showed that expenses of administration were built up and made the case administratively insolvent. *Blue Top* did not involve the claimed conflict here and languished for lack of progress. There, the court castigated debtor's counsel for allowing the debtor to incur further debt which could not be paid. In contrast, in the instant case, the Trustee testified that these consolidated estates are

---

holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed.
11 U.S.C. § 328(c) (emphasis supplied).

**12.** In fact, Needler's response to the Committee's objection specifically states that the April 6, 1995

retention order was entered *nunc pro tunc* to the filing date. *See* Debtor [sic] Attorney William L. Needler & Associates, Ltd. Response to Unsecured Creditor [sic] Committee's Objection to its First Interim Application for Approval of Fees and Expenses at p. 6.

administratively solvent, and perhaps all pre-petition creditors will be paid in full with a possible dividend to equity interests.

### d. *Hourly Rate Charged*

■ Next, the Committee challenges Needler's $175.00 hourly rate charged. The Committee maintains that the quality of the work produced by Needler does not justify the hourly rate charged. The Committee directs the Court's attention to what it characterizes as one "example of substandard legal services—the Debtor's plan and disclosure statement." [13] Needler argues that he agreed to charge less than his normal billing rate.

The Seventh Circuit has stated that the appropriate measure for determining reasonable attorneys' rates charged is the market approach. *See In re Continental Illinois Sec. Litig.*, 962 F.2d 566, 572 (7th Cir.1992) ("The object in awarding a reasonable attorney's fee ... is to give the lawyer what he would have gotten in the way of a fee in an arm's length negotiation, had one been feasible. In other words the object is to simulate the market where a direct market determination is infeasible."). Moreover, the Seventh Circuit has noted that the Bankruptcy Code requires that attorneys in bankruptcy matters receive the same compensation as they would earn in performing similar services outside the bankruptcy context. *See In re UNR Indus., Inc.*, 986 F.2d 207, 209–10 (7th Cir.1993); *see also* H.R.Rep. No. 595, 95th Cong., 1st Sess. 329–330 (1977) U.S.Code Cong. & Admin.News 1978 pp. 5787, 6285–6287.

■ The Court finds that Needler's rate is reasonable and well within the range of rates charged in the Chicago metropolitan area for bankruptcy matters. Generally, so long as the rates being charged are the applicant's normal rates charged in bankruptcy and nonbankruptcy matters alike, they will be afforded a presumption of reasonableness. *In re Jefsaba, Inc.*, 172 B.R.

786, 798 (Bankr.E.D.Pa.1994). Needler argued that he negotiated this lower rate with the CEO of Spanjer down from $195.00 per hour, his then normal billing rate, to $175.00 per hour. Thus, the Court overrules the Committee's objection to Needler's billing rate.

### e. *Travel Time*

■ Additionally, the Committee objects to Needler's charges for travel time. The Committee contends that Needler spent 51.25 hours traveling at $87.50 per hour for a total of $4,484.38. The Committee further suggests that Needler has failed to show that the Debtors were better served by retaining counsel who has an office in the suburbs, not in downtown Chicago. The Court rejects as disingenuous the Committee's contention that a debtor who files a bankruptcy case in Chicago should retain an attorney who has an office in Chicago. A client is normally entitled to counsel of choice, and the Court is unaware of any controlling statute, rule, or case law that suggests or requires a client to hire counsel in the same town in which the case is filed. Further, the Court has always allowed attorneys to charge for travel time when they are precluded from transacting work for other clients on other matters. *See In re Nephi Rubber Products Corp.*, 146 B.R. 782, 783 (Bankr.N.D.Ind.1992). The Court finds that Needler's reduced rate of $87.50 per hour to travel, which is one-half his normal hourly rate, constitutes a reasonable and necessary service, and thus is compensable.

Next, the Court will address the fees and expenses sought after the cases were substantively consolidated. The Court will address each category in turn.

### f. *Category 1*

■ Pursuant to this category, Needler seeks fees for work performed in connection with administrative matters. These services include preparation of the petitions and

---

13. Unfortunately, it is exactly this type of ad hominem attacks and other vitriolic exchanges between counsel for the Debtors and counsel for the Committee that has resulted in a detriment to the estates—increased legal fees exacerbated by

sometimes blatant lack of civility. The Court, once again, reminds all attorneys that they are bound by the Standards for Professional Conduct Within the Seventh Federal Judicial Circuit, adopted on December 14, 1992.

schedules, employment of Needler, corresponding with parties in interest and their representatives, and attending meetings and conferences with his clients and other parties in interest. The Court has carefully reviewed the time entries in this category and finds that the services performed were reasonable and necessary. As a result, the Court hereby awards in full the compensation requested in this category.

### g. *Category 2*

■ In this category, Needler requests fees for services performed in connection with preparation of a plan and disclosure statement and supplements and amendments thereto. The Committee argues that the Court should not allow any of the fees because the plan that Needler prepared, even as amended, was unconfirmable. In support of this argument, the Committee states that the plan classified unsecured creditors into five categories which violated 11 U.S.C. § 1122. The Committee further contends that the plan proposed to pay the unsecured creditors less than 100 cents on the dollar, which violated 11 U.S.C. § 1129(a)(7)(A)(ii). Further, the Committee alleges that the plan permitted the Spanjer family to retain their interest with no new infusion of capital, which doomed any chance of confirmation under § 1129(b)(2)(B)(ii). The Court will sustain, in part, the Committee's objection.

The Court disagrees with the Committee's contention that Needler should not be compensated at all for the drafting of the plan and disclosure statement because no benefit was conferred upon the Debtors. First, the Court routinely enters an order in all of its Chapter 11 cases requiring the filing of a plan and disclosure statement within 120 business days after the date of the filing of the petition, coterminous with the exclusivity period prescribed by 11 U.S.C. § 1121(b). Thus, the Debtors were obligated under order of the Court to file such documents. Because they are corporations and could only be represented by a licensed attorney admitted to practice before the bar of this Court, some attorney had to provide such representation and assist in the legal practice inherent in drafting any plan and disclosure state-

ment. *See* Local General Rule 3.10(A) of the United States District Court for the Northern District of Illinois and Federal Rule of Bankruptcy Procedure 9010(a)(2) (an authorized agent of a party may perform acts not constituting the practice of law). It is beyond cavil that the drafting of a Chapter 11 plan and disclosure statement is part and parcel of the practice of bankruptcy law. Necessary legal services include those which may be needed to facilitate the conduct of the debtor's business, as well as any services that are necessary to enable a debtor in possession to fulfill the duties and obligations to which 11 U.S.C. § 1107 refers. Among these obligations is the duty to file a plan of reorganization "as soon as practicable." 11 U.S.C. § 1106(a)(5). By filing a plan and disclosure statement, Needler was assisting the Debtors in their statutory duties and obligations, and hence, provided some benefit to the estates, even if the filed plan was not confirmed.

Furthermore, the Court is not willing to find that the plan was absolutely unconfirmable in any event as the Committee suggests. Neither an adequacy hearing under 11 U.S.C. § 1125 nor a confirmation hearing under § 1129 was ever held. Therefore, the Committee's contention that the plan was not confirmable is premature at best and now moot. The fact that the plan may have had flaws in it that would potentially render it unconfirmable does not *ipso facto* mean that the drafter should not be compensated for some of the efforts in developing, drafting, and filing the plan and attendant disclosure statement. That a plan and disclosure statement were filed has some benefit to the estates and all parties in interest because they provided information concerning the proposed method and means of reorganizing the bankruptcy estates and the Debtors' affairs for their future operations, if any, and the proposed treatment and satisfaction and payment, in whole or in part, of the claims of creditors.

■ The Court will not, however, compensate Needler for work performed with respect to the plan and disclosure statement after the Court entered an order appointing the Trustee. From that point in time, there

was no benefit rendered to the estates by the drafting or filing of the amended plan and disclosure statement. Accordingly, the following entries are hereby disallowed:

| DATE SERVICE RENDERED | HOURLY RATE | TIME EXPENDED | AMOUNT DISALLOWED |
|---|---|---|---|
| 05/29/95 | $175.00 | 4.0 hours | $700.00 |
| 05/29/95 | $175.00 | 1.50 hours | $262.50 |
| 05/30/95 | $175.00 | .50 hours | $87.50 |
| 05/31/95 | $175.00 | 2.0 hours | $350.00 |
| 05/31/95 | $175.00 | .50 hours | $87.50 |
| 05/31/95 | $ 87.50 | 2.0 hours | $175.00 |
| 05/31/95 | $175.00 | 1.0 hours | $175.00 |
| 05/31/95 | $175.00 | 1.0 hours | $175.00 |
| 06/02/95 | $175.00 | 5.0 hours | $875.00 |
| 06/02/95 | $ 87.50 | 2.0 hours | $175.00 |
| TOTAL | | 19.50 hours | $3,062.50 |

Hence, the Court hereby disallows $3,062.50 for the time expended by Needler in connection with the amended plan and disclosure statement after the appointment of the Trustee as unnecessary and of no benefit to the Debtors' estates.

**h.** *Category 3*

 In this category, Needler seeks fees for defense of the Committee's motion to appoint a Chapter 11 trustee. The Committee objects on the basis that opposing the motion was not consistent with the Debtors' or Needler's fiduciary obligation to creditors. The Committee contends that Needler's resistance to the appointment of a trustee was done at the behest of the shareholders and management of the Debtors—some of whom Needler was allegedly representing. The Committee further maintains that Needler's opposition to the motion was done to preserve his position as attorney for the Debtors.

The Court rejects the Committee's contention that Needler was really representing the shareholders or management of the Debtors. The unrebutted testimony at the hearing was that Needler solely represented the Debtors, not its management or shareholders, directly or indirectly. Moreover, the record is clear that the shareholders, some of whom were part of management, were separately represented by other attorneys during the contested fee applications, as well as at the prior hearing on the Committee's motion. The Committee's allegation to the contrary is not supported by the evidence. Further, the Court rejects the Committee's suggestion that Needler breached his fiduciary obligation to the creditors by opposing the appointment of a trustee. As previously stated by the Court with respect to Truax's fees, the Court is unwilling to hold that all fees incurred by counsel for a debtor opposing a motion for appointment of a trustee should be wholly disallowed when a trustee is ultimately appointed.

The Court will, however, sustain part of the Committee's objection to Needler's fees in this category on the basis that there was not full benefit to the estates for all the services performed. The Court reduces Needler's request for compensation by $1,500.00 for approximately 8.50 hours of excessive time spent reviewing documents and discussing the matter with his paralegal. Denial of all compensation for Needler's labors would effectively penalize him for following the directions of the Debtors' officers to retain their control position rather than be ousted by a Chapter 11 trustee. Clayton Spanjer testified that he and the other officers of Spanjer directed Needler to object to and resist the appointment of a trustee.

 Section 330 does not authorize compensation only to professionals who take successful actions. To the contrary, if there was a reasonable chance of success which outweighed the cost in pursuing the action, then fees relating thereto are compensable. *See Jefsaba*, 172 B.R. at 799. Hindsight is always 20/20, but no one could prejudge whether or not the Court would either grant the Committee's motion or sustain the Debtors' objections until after all the evidence was admitted. The Court does not expect an attorney for a debtor to succeed in every endeavor he undertakes on behalf of the debtor. Needler's representation was on an hourly rate basis, not a contingent fee arrangement. But, the endeavor for which the estate is expected to pay must be reasonably calculated to produce a benefit to the estate. *See In re Hunt*, 124 B.R. 263, 267 (Bankr. S.D.Ohio 1990). There was a definite benefit, though noneconomic, to the estates in having a full trial on the merits on the issue of whether the facts and circumstances warranted the appointment of a Chapter 11 trustee.

On the other hand, to fully compensate Needler would ignore § 330(a)(4)(A)(ii)(I) which prevents the Court from compensating an attorney for services that were not "reasonably likely to benefit the debtor's estate". The Court finds that some of the services expended by Needler pertaining to the appointment of a trustee were of no benefit to the estates. In addition, some of the time and effort expended by Needler fighting the appointment of a trustee harmed the estates by increasing the costs of administration— his fees as well as the fees of the Committee's attorneys and its retained professionals. Many of the creditors did not have confidence in the Debtors' ability to reorganize. After completion of discovery, objective analysis by Needler should have revealed that some of the grounds of the motion were well founded. The evidence at trial was undisputed that for some time prepetition and postpetition, the Debtors were losing money at the approximate rate of $50,000.00–60,000.00 per month, and by the time of trial on the Committee's trustee motion, there was little, if any, remaining balance sheet equity per the Debtors' own books and records.

 While Needler "had an obligation to keep the debtor[s] in possession, if appropriate [he] also owed a duty to the Court and the creditors." *In re Colorado–UTE Elec. Ass'n, Inc.*, 132 B.R. 174, 180 (Bankr.D.Colo. 1991). As a result, the estates should pay only an appropriate portion of those fees. The Court will not compensate Needler's paralegal for attendance at the hearing on the motion to appoint a trustee on 05/25/95 and 05/26/95 absent some showing of the necessity for him to attend. Consequently, the Court hereby disallows 7 hours at $75.00 per hour for a total of $525.00 as unreasonable and unnecessary.

 In addition, the Committee has objected to fees sought in connection with a notice of appeal filed and a designation of the record on appeal regarding the Court's appointment of the Trustee. The Committee contends that the time expended was on an interlocutory and nonappealable order and conferred no benefit to the estates, especially in light of the withdrawal of the appeal. The Committee argues that the appointment of a trustee is not a final, appealable order, and hence, Needler should never have filed the appeal.

The Court hereby sustains in part the Committee's objection to the fees sought regarding the appeal. In *In re Cash Currency Exchange, Inc.*, 762 F.2d 542 (7th Cir.), *cert. denied*, 474 U.S. 904, 106 S.Ct. 233, 88 L.Ed.2d 232 (1985), the Seventh Circuit held that an order appointing a trustee was interlocutory and reviewable only if the district court agreed to entertain the appeal. *Id.* at 546. More recently, in dicta, the Seventh Circuit stated in *In re Wade*, 991 F.2d 402 (7th Cir.), *cert. denied*, — U.S. —, 114 S.Ct. 195, 126 L.Ed.2d 153 (1993) that an order appointing a trustee was a final and appealable order. *Id.* at 406 (citation omitted). *Accord In re Cajun Elec. Power Co-op., Inc.*, 69 F.3d 746 (5th Cir.1995). Therefore, it is not crystal clear in this Circuit whether an order directing appointment of a Chapter 11 trustee is appealable. Consequently, the Committee's suggestion that Needler's appeal was completely frivolous is rejected.

Clayton Spanjer testified that the officers of Spanjer directed Needler to file the notice of appeal. Thus, Needler was following the direct instruction of the CEO of his clients, the Debtors. To deny all of his fees would result in his being penalized for following that instruction. Some degree of restraint should be exercised by the Court in light of the undisputed testimony at trial that at all times Needler acted at the direction of or with the support of the Debtors' management. To allow all fees sought, however, would be in violation of § 330(a)(4)(A)(ii)(I) which prevents the Court from compensating Needler for services that were not reasonably likely to benefit the Debtors' estates. Other courts have held that fees for prosecuting an appeal will not be allowed absent a showing of benefit to the estate. *See In re Watervliet Paper Co., Inc.*, 109 B.R. 733, 735 (Bankr.W.D.Mich.1989) (counsel for debtor was not entitled to compensation from the estate for time expended pursuing an appeal of an order conditioning counsel's retention on waiver of fees for prepetition nonbankruptcy work absent a showing that the ap-

peal benefited the estate). Thus, the Court hereby disallows $500.00 of time expended by Needler's paralegal as excessive and of little benefit to the Debtors' estates.

■ The Committee further suggests that any and all work performed by Needler post-appointment of the Trustee should be denied in full because the Trustee did not request Needler to perform the services; the Trustee did not employ Needler as special counsel under 11 U.S.C. § 327(e); and the services conferred no benefit to the Debtors' estates. The Court has previously disallowed all time expended with respect to the amended plan of reorganization and preparation of the disclosure statement as conferring no benefit to the estates. Hence, that time expended will not be included in the time considered under this objection.

The Committee's contention that Needler is barred from being compensated post-appointment of the Trustee is not entirely correct. Courts are split on the issue of whether a debtor's attorney can be compensated for services rendered after the appointment of a trustee. A minority view adopts the approach that would prohibit an attorney from receiving any compensation after the appointment of the Chapter 11 trustee. *See In re NRG Resources, Inc.*, 64 B.R. 643, 647 (W.D.La.1986). The court in *In re Ginji Corp.*, 117 B.R. 983, 992 (Bankr.D.Nev.1990), however, took a less stringent approach and developed the "benefit analysis" approach. The *Ginji* court rejected the *NRG* approach and permitted compensation to a debtor's attorney after the appointment of a trustee, but only after "scrupulously inquir[ing] into such services so as to ascertain whether or not they were for the benefit of the estate or for some other interest." *Id.* at 992. Many courts have adopted a similar approach, requiring some benefit to the estate. *See, e.g., In re TS Indus., Inc.*, 125 B.R. 638, 643–44 (Bankr.D.Utah 1991); *In re Sugarman*, 137 B.R. 391, 392–93 (Bankr.S.D.Cal.1992) (case by case "benefit analysis"); *In re Stoecker*, 114 B.R. 965, 970 (Bankr.N.D.Ill.1990). The court in *Pfeiffer v. Couch (In re Xebec)*, 147 B.R. 518 (9th Cir. BAP 1992) adopted the "benefit analysis" approach setting forth the following considerations for assessing the benefit to the estate: (1) whether the debtor's attorney's actions duplicated the duties of the trustee or the trustee's counsel under 11 U.S.C. § 1106; (2) whether the services obstructed or impeded the administration of the estate; and (3) whether the debtor's attorney's actions are consistent with the debtor's duties under 11 U.S.C. § 521. *Id.* at 523. *Accord Friedman v. Melp, Ltd. (In re Melp, Ltd.)*, 179 B.R. 636, 639–40 (E.D.Mo. 1995). "[F]ollowing the appointment of an operating trustee, the attorney for a debtor out of possession may recover fees from the estate only for services which provided an identifiable, tangible and material benefit to the estate. In addition, the compensation must be reasonable and for actual, necessary services." *Melp*, 179 B.R. at 640.

The Court will not adopt the minority approach, which allows no fees to counsel for a debtor subsequent to the appointment of a Chapter 11 trustee. The Court finds that the better view is the "benefit analysis" approach. The Court has carefully reviewed the time expended by Needler after the appointment of the Trustee and finds that the services rendered did not duplicate the time expended by the Trustee. Finally, these services are consistent with the Debtors' duties under § 521, in that Needler performed work relating to cash collateral issues, meetings with the Trustee, appearances before the Court, as well as status meetings with the Debtors' officers and their respective attorneys.

**i. Category 4**

■ In this category, Needler performed services in connection with the litigation of cash collateral issues with LaSalle National Bank. The Committee objects to the amount of fees sought by Needler in this category because the Committee maintains that Needler should have worked out any cash collateral issues with the Bank prior to the filing of the cases. The Court overrules the Committee's objection in this regard. The Court finds that the time expended by Needler on the issue of cash collateral was reasonable and necessary. In a perfect world, Needler might have worked out all issues of cash collateral with the Bank prior to filing the

cases. But, as the Committee is aware, we live in an imperfect world and bankruptcy cases are no exception. Sometimes, as here, cash collateral issues are not resolved between a debtor and the secured creditor prior to the filing of the petition. The Court will not penalize Needler because this issue was not resolved prior to the filing of the cases.

#### 2. *Expense Reimbursement*

 Needler seeks reimbursement of $5,547.39 for his expenses. The Court previously disallowed the expenses incurred in connection with Needler's representation of the Spanjer estate. Thus, the remaining expenses of $3,047.01 are at issue. These expenses include the following: express delivery charges; telephone charges; photocopies at 18 cents per page; incoming facsimiles; postage charges; the Chapter 11 filing fee of $800.00 for one of the Debtor's petitions; parking charges; and mileage reimbursement charges at 30 cents per mile. The Committee appears to have objected to the reimbursement of the telephone charges because they are not itemized, the facsimiles because no stated rate was provided, and postage charges because they were not itemized.

The Court follows the expense description guidelines set forth in *Convent Guardian.* Those guidelines require some explanation showing the reasonableness, necessity, and description of exactly what was advanced. 103 B.R. at 945. The Court finds that Needler has met those guidelines. Based upon a review of the fee application, the Court finds that Needler has made a sufficient showing of the reasonableness and necessity for incurring the expenses. To require Needler, as the Committee seems to suggest, to itemize every phone call or letter sent out would be an onerous burden and a strained interpretation of the *Convent Guardian* case. Accordingly, the objection of the Committee regarding these expenses is overruled. The Court finds that all expenses have been sufficiently explained to warrant allowance. Consequently, the Court hereby authorizes reimbursement of expenses in the amount of $3,047.01.

### V. *CONCLUSION*

For the foregoing reasons, the Court sustains in part and denies in part the Committee's objections to the request for fees and expense reimbursement by both Truax and Needler. The Court hereby awards fees to Truax in the sum of $1,683.25. The Court allows Truax to draw down an additional $433.25 of the $2,500.00 retainer he previously received. The remainder of the retainer, however, namely $816.75 must be disgorged and turned over to the Trustee. Further, the Court hereby awards fees to Needler in the sum of $44,875.00 and authorizes reimbursement of expenses in the amount of $3,047.01.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.